# THE STATE v. DON FORAN, Appellant.

### Division Two, February 17, 1914.

1. **EVIDENCE:** ' **Objections: Cross-Examination: Murder.** During his cross-examination, the accused, on trial for murder, was asked, over his counsel's objection, if he had not had certain offers of work and refused them, and he answered, "No, sir, never." *Held,* that the overruling of the objection did not harm the accused.

2. **MURDER: Instructions: Manslaughter.** In a prosecution for murder an objection that the trial court erred in failing to instruct on manslaughter is made too late if made for the first time before the Supreme Court, but even though the attention of the trial court was not called to the matter the Supreme Court will examine the case to see whether the verdict might have been different if such an instruction had been given, and where the State's evidence clearly shows a cold-blooded murder and the defendant's testimony disclaims manslaughter and self-defense and claims that the killing was accidental, and where, too, the jury, after being instructed on murder in the first and second degrees, found defendant guilty of first degree murder, there was no place for an instruction on manslaughter.

3. ———: **Evidence: Threats: No Offer of Proof.** In a prosecution for murder a witness testified that deceased had threatened defendant's life, but an objection was sustained as to what deceased said in making those threats, and no offer of proof was made. *Held,* that the point cannot be considered. When counsel desire the Supreme Court to consider the propriety of excluding evidence; they must show what the proposed evidence would have been.

4. ———: **First Degree: Instructions: "On Purpose."** An instruction for first degree murder which charges that the defendant acted "wilfully, premeditatedly and of malice afore-

thought," is not erroneous for that it omits the words "on purpose."

5. ———: ———: ———: **Threats.** The Supreme Court approves an instruction on threats, given in this prosecution for murder, which reads, in substance: "Although you may believe from the evidence that prior to the time she was shot the deceased had made threats against the defendant, yet this fact alone does not justify or excuse or palliate the offense of murder, provided the jury shall further believe from the evidence that at the time deceased was shot she made no threats against defendant and made no attack or assault upon defendant and made no demonstration of violence against defendant."

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw*, Judge.

AFFIRMED.

*George Birmingham* and *Horace S. Kimbrell* for appellant.

(1) The court erred in permitting State to cross-examine defendant concerning his refusal of positions offered. No such matter had been referred to in defendant's evidence, and this method of cross-examination, taken in connection with the prosecuting attorney's opening statement and closing argument, to the effect that defendant was a worthless fellow—an idler who lived off of the vices of a fallen woman, was prejudicial error. R. S. 1909, sec. 5242; State v. Grant, 144 Mo. 56; State v. Hathorn, 166 Mo. 229; State v. Kyle, 177 Mo. 659; State v. Fullerton, 90 Mo. App. 411; State v. McGraw, 74 Mo. 573; State v. Porter, 75 Mo. 171; State v. Trott, 36 Mo. App. 29; State v. Rugan, 68 Mo. 214. (2) The court erred in excluding the evidence of witness Berkowitz as to threats made by deceased against defendant. This was excluded on the ground that such threats were not communicated to defendant. State v. Sovern, 225 Mo. 580; State v. Wright, 141 Mo. 333; State v. Cochran, 147 Mo. 504;

State v. Smith, 164 Mo. 567; State v. Evans, 158 Mo. 589; State v. Spencer, 160 Mo. 118; State v. Hollingsworth, 156 Mo. 178. (3) The court erred in failing to instruct upon the law of manslaughter made essential by the account of the killing given by the defendant as a witness in his own behalf, the probability or improbability of his statement being solely a question for the jury. State v. Banks, 73 Mo. 592; State v. Palmer, 88 Mo. 566; State v. McKinzie, 102 Mo. 622; State v. Talmage, 107 Mo. 543; State v. Conway, 241 Mo. 271. (4) Instruction 3 is faulty. The information charges that appellant, on purpose, and of his malice aforethought, did make an assault, etc. The instruction omits the words "on purpose," and in the light of the evidence of defendant about the assault of the deceased upon him and the conflict and struggle preceding and attending the homicide, the instruction was misleading. Furthermore, the words, "unless you shall find and believe from the evidence that such killing, if any, was done accidentally and thereby justified, as defined in instructions 12 and 13, when taken into consideration with the fact that "on purpose," according to this instruction, was not an essential element of first degree murder, might under the facts as detailed by defendant as a witness in his own behalf have led to the verdict herein rendered, although the jury might have believed the killing was the result of reckless and criminally careless conduct of defendant while engaged in a bitter quarrel and violent scuffle with deceased. This instruction, it seems, also brings clearly to view the error of failing to instruct on manslaughter, third and fourth degrees. Furthermore, the instruction was a comment on the evidence offered by appellant in his own behalf and a harmful characterization of the defense he made. State v. Holmes, 17 Mo. 147; State v. Gates, 20 Mo. 400; State v. Grugin, 147 Mo. 56; State v. Higgerson, 157 Mo. 99. (5) The same objection urged to instruction 3 is applicable to No.

4. (6) Instruction 8 is vicious. It commented on the evidence, assumed that the defendant's offense was murder, and denied the jury the right to take into consideration any evidence or theory except that of the State.

*John T. Barker*, Attorney-General, and *William M. Fitch*, Assistant Attorney-General, for the State.

(1) It does not appear in the record that defendant ever did an honest day's work after meeting the deceased, but from that time on "lived a sporting life" and "gambled all over town." The record shows that he demanded of the woman he killed that she go out upon the street and get money they needed or he would kill her. When on the stand he never denied the statements that he had driven this woman out into the street to earn money by prostitution, nor did he deny the threats to kill her. His failure to deny these criminating statements was an admission of their truth, as much so as if expressly admitted to be true. State v. Music, 101 Mo. 271; State v. Paxton, 126 Mo. 514; State v. Alexander, 119 Mo. 461; State v. Taylor, 134 Mo. 127; State v. Grubb, 201 Mo. 610. Again, it was immaterial to the issues in the case whether commission men on Walnut street had offered appellant positions which he refused to take. It was his privilege to lead a life of idleness, if he could so do honestly, and without objection he testified on cross-examination that he supported himself by gambling. He denied emphatically that he had been offered positions by these commission men, and no one was ever introduced to contradict him, and this inquiry could not possibly have influenced the jury, and under the ruling of this court in State v. Barrington, 198 Mo. 78, and cases cited, this point should be ruled against appellant. (2) The testimony of appellant clearly shows an accidental killing, and if true, negatives any reasonable

inference of manslaughter in any degree. The State's testimony viewed from every angle disclosed the perpetration of a cold-blooded murder. However that may be, the appellant failed to call the attention of the court to its failure to instruct on the law of manslaughter. The fourth ground of the motion is: "Because the court erred in refusing to instruct on all the law arising from the evidence." The record is silent as to any request of the appellant for an instruction on manslaughter. It cannot be claimed that this fourth ground of the motion called the attention of the court to its failure to instruct on the law of manslaughter. The case at bar is not one where the verdict could have been different had such an instruction been given. The jury could not possibly have believed the defend- ant's story in the face of all the other testimony show- ing an intentional killing. State v. Conway, 241 Mo. l. c. 292. (3) Murder in the first degree has been de- fined by the Supreme Court of this State to be a killing done wilfully, deliberately, premeditatedly and of mal- ice aforethought, and it follows that instruction 4 is not faulty in that it omits the words "on purpose" used in the information. State v. Thompson, 78 Mo. 342; State v. Stephens, 96 Mo. 645; State v. Taylor, 143 Mo. 157; State v. McCarver, 194 Mo. 727. The pleader need not have used the words "on purpose" in the information. Their office was filled by the use of the word "wilfully." The information would have sufficiently charged murder of the first degree had they been omitted. State v. Lang, 201 Mo. 667. It is not necessary that an instruction use the identical words of a criminal charge in an infor- mation. State v. Tobie, 141 Mo. 556. (4) What we have said concerning instruction 3 applies equally to instruction 4.

ROY, C.—Defendant was convicted of murder in the first degree and sentenced in accordance with the

verdict to imprisonment for life. He shot and killed
his wife, Gertrude, in their room in the sec-
**Murder.** ond story of a rooming house in Kansas City,
about midnight, July 23, 1912. A window in their room
opened just above a roof from which a stairway led
to the alley below. '

According to the testimony, he was about twenty-
two years old at the time of the trial, and first met
the deceased about two years before in a sporting
house. She was then living with one Ed Griffith. De-
fendant abandoned his home with his mother and sis-
ter and took up with Gertrude, and about a year later
married her. He stated on the witness stand that he
lived a sporting life and "gambled all over town."

About eight o'clock the night of the shooting he
procured a revolver. He testified that he got it at her
request, as she was uneasy about staying alone at
times, and that he delivered it to her.

Her father at times called and spent an evening
with her. On the night of the killing defendant and
his wife were in the room, the defendant going out and
returning once or twice. About eleven-thirty, a per-
son who had been in the room with them left, and she
was heard to say, "Good night, daddy." A few min-
utes later a shot was heard by the landlady and by a
roomer and also by three men at the mouth of the
alley. The landlady heard her say, "Oh, don't," fol-
lowed by a scream, then four more shots were fired
in rapid succession. Immediately afterward she was
found dead with a bullet wound in each breast and one
in the back of her neck. He was not seen to pass
through the hall. The window was open. A pistol was
on the outside stairway. He, emerging from the alley,
encountered the three men who had heard the shots
and the scream, and who also heard a noise on the roof,
and said to them that he had killed two in the alley.
He went to the room of Thomas H. Miller and told
him that he had "shot Gertrude" and wanted some

carbolic acid to kill himself.  He was without hat, coat or shoes.    When arrested a few moments later, he "showed fight."

Four witnesses testified to various occasions when he told his wife to go out on the streets and get the money, or he would kill her, or "kick her."

Ben Portman testified that defendant and his wife quarreled about some money and that she "pulled out a gun and threatened to fix him if he didn't give her the money."

Ben Berkowitz testified that about a month before the murder the deceased made threats against the life of the defendant.  Then the following occurred on the trial: "Q.  Where was that and what was said?  Mr. Curtin:  We object to what was said.  The testimony of the defendant here is to the effect that this was an accident; that he had nothing to do with the shooting, therefore the testimony of any threats is wholly immaterial.  The Court:  Did you tell the defendant of these threats?  A.  No, sir, I told a friend of his, a bartender.  The Court:  Did you tell the defendant?  A.  No, sir.  The Court:  He says he didn't tell him.  Mr. Kimbrell:  The defendant said he had been told by this man.  The Court:  I will sustain the objection.  Mr. Kimbrell:  Exception.  That is all."

The defendant's testimony as to the killing was as follows:

"I had an application to go to work on the fire department and I asked her if she would wake me up in the morning so that I could have the doctor's examination and be prepared to go on.  I want to get on it right away.  She didn't seem to want for me to take it.  She said she did not want me to take it at all, and there was a little argument came up about her talking to Ed Griffith.  I told her to never talk to him, because he wouldn't do her any good, a fellow she lived with.  She says it is very funny you would keep me from talking to everybody.  You are going to work on this

fire department and all this. You won't go to work anywhere, because we are going to leave together, and she started to fire, and I jumped up and grabbed her, and she fired two shots at me, and we were wrestling with the gun. I don't know how many shots went into her. The rest of them went into her through this struggle."

During the cross-examination the following occurred: "Q. Isn't it a fact that the commission men on Walnut street offered you positions and you refused to take them? Mr. Kimbrell: We object to that as improper, and not cross-examination of this defendant. The Court: Objection overruled. Mr. Kimbrell: Exception. Q. Didn't commission men on Walnut street offer you positions and didn't you refuse to take them? A. No, sir, never."

The court instructed on murder in the first and second degrees. Those instructions did not use the words *on purpose,* but did use the words *"wilfully, premeditatedly and of malice aforethought."* The instructions on murder in the first degree included the word "deliberately."

The eighth instruction was as follows:

"The court instructs the jury that although you may believe from the evidence that prior to the time she was shot the deceased had made threats against the defendant, yet this fact alone does not justify or excuse or palliate the offense of murder, provided the jury shall further believe from the evidence that at the time deceased was shot she made no threats against defendant and made no attack or assault upon defendant and made no demonstration of violence against defendant."

There was an instruction on accidental shooting. There was no instruction asked or given on manslaughter or self-defense. The only point made in the motion for new trial on the failure of the court to instruct is as follows: "Fourth. Because the court erred in refus-

State v. Foran.

ing to instruct on all the law arising from the evidence."

I. Overruling the objection to the question asked of defendant on cross-examination as to whether the commission men had offered him a position which he refused, did not harm the defendant. Such an offer, if made, was complimentary to him, so that the mere question did not prejudice him with the jury. The answer was, "No, sir, never," and he was not contradicted on that point. We are unable to see how he was harmed by the incident.

*Objections to Evidence.*

II. Defendant is not in position to complain of the fact that no instruction on manslaughter was given. The trial court's attention was not called to the subject of an instruction on manslaughter either on the trial or in the motion for a new trial. The objection made here for the first time comes too late. [State v. Conway, 241 Mo. 292.] The higher rule is recognized in that case that we are bound to see that no injustice is done even though the court's attention was not called to the particular point in the motion for a new trial. We have examined the case to see whether the verdict might have been different if such an instruction had been given. We find that the State's evidence clearly shows a cold-blooded murder. The defendant's testimony disclaims manslaughter and self-defense and claims that the killing was accidental. Manslaughter is not consistent with the theory either of the State or of the defendant. What is more, the jury were instructed as to both first and second degree murder. They found him guilty of the higher offense. They evidently would not have considered the idea of manslaughter.

*Instruction on Manslaughter.*

III. Ben Berkowitz testified that deceased had threatened the life of defendant. When asked what

was said by her, an objection was sustained. There was no offer to show what the answer would **No Offer of Proof.** have been. We can not act in the dark as to the merits of defendant's rights to the answer. Whether the answer would have weakened or strengthened the evidence already given that she threatened his life, we cannot say. When counsel desire us to consider the propriety of excluding evidence, we must be·shown what the proposed evidence would have been. [State v. Page, 212 Mo. l. c. 238.]

IV. The failure to use the words "on purpose" in the instructions was not error. Those words are synonymous with "wilfully" which was **Instruction: "On Purpose."** used. The instructions, in that respect, are such as are ordinarily given. [State v. McCarver, 194 Mo. l. c. 727; State v. Stephens, 96 Mo. l. c. 645.]

V. Instruction 8 on the subject of threats is.in substance the same as those approved in State **Threats.** v. Sovern, 225 Mo. 607; State v. Spencer, 160 Mo. l. c. 124 and State v. Rider, 95 Mo. 484.

The judgment is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.