## THE STATE v. WILLIAM PHILPOTT, Appellant.

### Division Two, May 9, 1912.

1. **DEFENDANT AS WITNESS: Impeachment: Reputation for Morality.** The credibility of a defendant in a homicide case who has testified in his own behalf may be attacked by testimony showing that his reputation for morality in the community in which he lives is bad. The inquiry cannot be limited to his reputation for truth and veracity.

2. **SELF-DFEENSE: Instruction.** The instruction on self-defense approved in State v. Gee, 85 Mo. 1. c. 650, is again approved as a correct declaration of the law of self-defense.

3. **VERDICT: Corrected by Court.** A correction of the verdict by the court by making the words "and assess his punishment at ten years in the penitentiary" to read "and assess his punishment by imprisonment in the penitentiary for a term of ten years," made in the presence of the jury, and after being read to them approved by them, as shown by their poll, was not a verdict of the court. The verdict as returned was sufficient and would have supported a verdict.

4. **INSTRUCTION: Manslaughter in Fourth Degree: Self-invited Error: Not Available to Appellant.** Although under the evidence defendant was entitled to an instruction on manslaughter in the fourth degree, yet if during the trial he insisted that the State should be confined to murder in the second degree, and the court's failure to instruct on manslaughter was merely the doing of what defendant insisted should be done, the court's action was defendant's own self-invited error, of which he cannot complain. The statute (Sec. 5115, R. S. 1909) forbids a reversal of a judgment "for any error committed at the instance or in favor of defendant."

Appeal from Livingston Circuit Court.—*Hon. A. B. Davis*, Judge.

AFFIRMED.

*Scott J. Miller* for appellant.

(1) The court committed error in permitting testimony of witnesses used by the State, over the objection of the defendant, to prove the defendant's reputation for morality was bad, because the only issue, if competent at all, would be the question of truth and veracity, and not of morality or general worth. State v. Wertz, 195 Mo. 579. (2) At the close of all the testimony, when all the evidence was in, and the degree of the crime, if any committed, could be ascertained by the court, the defendant insisted that the court should instruct on murder in the first degree, and first degree alone; that the issue should be defined by the court to first degree murder, second degree murder or

manslaughter in the fourth degree. The court over-ruled the suggestions of the defendant, leaving the three degrees of murder before the jury, but did not instruct on manslaughter in the fourth degree, which, under the testimony in this case, is error. (3) When the jury brought in the verdict, it was rewritten by the court, and the verdict found by the jury was in open court and not in the seclusion of the jury room, and was the verdict, as written, of the court and not of the jury. While it might have been the intention of the jury, and probably was, to sentence the defend-ant to ten years in the penitentiary, yet it was the jury's duty to make the verdict in due form, and not the court's. The court should have sent the jury back to their room with proper instructions. (4) The court should have instructed on manslaughter in the fourth degree. If there ever was a case in this court where manslaughter in the fourth degree was proper, this is one of them. At the close of the case, for some rea-son, the record does not state the fact as it should, by the insertion of the word "not." The quibbling, at the time, was the request that the court instruct on all the law of the case, and the insistence that the prose-cuting attorney, not having elected to stand on murder in the first degree, the court should instruct on man-slaughter in the fourth degree and murder in the sec-ond degree; and these matters are made points of error in the motion for a new trial, and were spe-cifically called to the court's attention in said motion. State v. Maupin, 196 Mo. 177.

*Elliott W. Major*, Attorney-General, and *John M. Dawson*, Assistant Attorney-General, for the State.

Where appellant testified in his own behalf, the State can impeach his credibility as a witness by show-ing his reputation for morality is bad, and it makes no difference whether or not appellant offers testi-mony sustaining his character. In such case he occu-

pies the same position, as to being impeached and discredited, as any other witness. State v. Priest, 215 Mo. 1.

KENNISH, J.—This is an appeal from the circuit court of Livingston county. Appellant, William Philpott, at the January term, 1910, of said circuit court, was convicted of murder in the second degree for having killed John Shellhorn by stabbing him in the neck with a butcher knife. The jury assessed his punishment at imprisonment in the penitentiary for a term of ten years, and from the sentence pronounced and judgment entered he appealed to this court.

The State introduced evidence tending to show the following facts:

The defendant, a man sixty-four years of age at the time of the homicide, lived in the town of Dawn in Livingston county, where he was engaged in the business of running a meat market. The deceased, who was thirty-five years of age, worked for a man named Lionberger, who had a restaurant in Dawn. Deceased was a much larger and stronger man than the defendant. On the 25th of December, 1909, during the forenoon, defendant and deceased, while in Lionberger's restaurant, had a quarrel about a bottle of whiskey. Defendant left the restaurant, and went to his meat shop. Between eleven and twelve o'clock that morning deceased went to defendant's meat shop to buy a soup bone. A quarrel ensued over the price. Two witnesses were present during a part of the quarrel, but, according to their testimony, neither of them was an eye witness to the homicide. They both testified, however, that the deceased was intoxicated when they saw him at defendant's place of business. One of them testified that defendant asked him to take deceased out of his shop. The witness endeavored to persuade deceased to leave the shop with him, but deceased refused to go. About twelve o'clock, and after both wit-

nesses had left the shop, defendant went to the post-office and also to a store and requested several men to go to his shop and see about Shellhorn, telling them that he thought he had killed him. Two men went to defendant's shop and found Shellhorn lying on the floor dead. He had been killed by a knife stab that severed the jugular vein.

The witness who was last to leave the defendant's shop while the two men were quarrelling, gave a very meagre and unsatisfactory account of what he observed. He testified that while the men were quarreling he started to leave. When he reached the door, and while his back was to them, he heard a noise as if they were scuffling and looking back saw them facing each other and saw blood on the floor. He went out of the room, walked down the street and said nothing about what he had seen until after the defendant had appeared on the street and requested the men he met to go to his shop and see about Shellhorn.

The defendant testified in his own behalf. He gave the following version of the killing. After the quarrel in the early forenoon deceased came to his shop to buy a soup bone. He cut and wrapped up the bone and told deceased the price of it was twenty-five cents. Deceased, with an oath, exclaimed that the price was too high, became very much enraged and refused to receive his purchase. He repeatedly cursed the defendant, using numerous vile epithets. Defendant ordered him out of the shop and requested a witness who was present to take him out, but deceased refused to leave. Defendant, with a butcher knife in his hand, went to a table on which there was a hind quarter of beef and began to cut out a kidney. While he was so engaged deceased assaulted him by striking him on the back of the head with an iron stovelid lifter. He ran to the rear door of his shop and attempted to escape. Deceased followed him and continued striking him with the lidlifter, when he threw up his hand in which

he held the knife, in an attempt to ward off the blows of deceased, and in so doing struck deceased with the knife and inflicted the fatal wound.

The State, in rebuttal, offered testimony tending to show that the defendant bore a bad reputation for morality in the community in which he lived. The cross-examination of the State's witness in rebuttal developed the fact that the deceased also had a bad reputation for morality.

The court submitted the case to the jury under instructions which authorized a conviction of murder in the first or second degree, or an acquittal on the ground of self-defense or on the theory of an accidental killing.

The jury returned into court the following verdict: "We, the jury, find the defendant guilty as charged in the indictment of murder in the second degree and assess his punishment at ten years in the penitentiary." When the verdict was read the court, with the consent of the jury, corrected the form of the verdict so that it read as follows: "We, the jury, find the defendant guilty as charged in the indictment of murder in the second degree and assess his punishment by imprisonment in the penitentiary for a term of ten years." The verdict as corrected was read to the jury and upon a poll of the jury each member thereof said that the verdict as corrected was his verdict.

I.  Appellant contends that the court committed error in permitting the State, after the defendant had testified as a witness in his own behalf, to introduce testimony in rebuttal showing that defendant's reputation for morality was bad. Appellant's claim is that the inquiry should have been limited to the question of his reputation for truth and veracity. We cannot give our assent to this contention. It is the law of this State that when a defendant in a criminal case goes

upon the stand as a witness in his own behalf, the State may attack his credibility as a witness by showing that his reputation for morality in the community in which he resides, is bad. [State v. Priest, 215 Mo. 1; State v. Beckner, 194 Mo. 281; State v. Weeden, 133 Mo. 70.]

II. Complaint is made of instruction numbered 10, given at the request of the State, upon the subject of self-defense. We shall not set out this instruction. It is almost identical in form with instruction numbered 13 in State v. Gee, 85 Mo. l. c. 650, which has so many times received the approval of this court as a correct declaration of the law of self-defense that we do not think it necessary to discuss it.

III. It is assigned as error that the court changed the verdict returned by the jury and that, as changed, it was the verdict of the court and not of the jury.

The change made was merely as to its wording. As returned by the jury it found the defendant guilty of murder in the second degree, as charged in the indictment, and assessed his punishment ''at ten years in the penitentiary.'' As corrected by the court it found the defendant guilty of murder in the second degree, as charged in the indictment, and assessed his punishment ''by imprisonment in the penitentiary for a term of ten years.'' The verdict as corrected was read to the jury. The jury was polled and each member thereof, in answer to the question whether as corrected and read it was his verdict, said that it was. The change was unimportant. It was sufficient and would have supported the judgment as returned. [State v. Beverly, 201 Mo. 550.] This complaint is wholly lacking in merit. [State v. Chumley, 67 Mo. 41.]

IV. The assignment of error most strongly urged at the oral argument and in appellant's brief is that

the court failed to instruct the jury on manslaughter in the fourth degree, and overruled a motion for a new trial and specifically called attention to the failure to so instruct.

On this assignment of error the record presents the following situation: The defendant, testifying as a witness in his own behalf, admitted that he killed deceased by stabbing him in the neck with a butcher knife. Assuming the truth of such testimony, a presumption of law would arise, in the absence of any other evidence, that the defendant was guilty of murder in the second degree. But the defendant further testified (and his testimony is the only direct evidence in the case as to how and why he killed deceased) that deceased assaulted him by striking him on the head with an iron lid lifter and was still beating him when he struck the fatal blow. If this testimony was true it afforded a lawful provocation for the killing in a heat of passion and reduced the crime from murder to manslaughter in the fourth degree. [State v. Barrett, 240 Mo. 161; State v. Gartrell, 171 Mo. 489; State v. Starr, 38 Mo. l. c. 277; State v. Sebastian, 215 Mo. l. c. 80.] With such evidence in the case the defendant was entitled to an instruction on manslaughter in the fourth degree. [State v. Bidstrup, 237 Mo. 273.]

Although the court failed to give an instruction on manslaughter in the fourth degree and although the defendant properly preserved such failure as a ground of the motion for a new trial, we must hold that such action of the court was not prejudicial error, and for the following reason: At the close of all the evidence and before the court instructed the jury, the following recital appears in the record, to-wit:

"By Mr. Miller: I insist, as the prosecuting attorney did not at the close of the testimony elect to stand on murder in the second degree or manslaughter in the fourth degree, that now the court cannot give

instructions upon these two grades of crime; that under the law at present, if the prosecuting attorney elects to prosecute for a less degree than that which defendant is indicted for, he could do so, but not electing, is confined to the charge in the indictment.

"By the Court:  Overruled.

"To which ruling on the part of the court, the defendant, by counsel, then and there duly excepted at the time and still excepts."

It thus appears from the record that the defendant, by objecting to the court instructing on any degree of homicide less than that charged, placed himself in a position to assign error to the action of the court in the motion for a new trial and on appeal, if it had given an instruction on manslaughter in the fourth degree.  When the court omitted to instruct on manslaughter it was merely doing what the defendant insisted that it should do.  The action of the court therefore clearly falls within the law of self-invited error. [State v. Keele, 105 Mo. 38; State v. Cushenberry, 157 Mo. 168; State v. Zorn, 202 Mo. 12.]    In the case of State v. Keele, supra, this court held, as stated in the syllabus, that:  "A defendant who requests the court to limit its instruction to the specific offense charged in the indictment cannot complain of its failure to instruct on lower grades of the crime."  In the opinion in that case the court said:  "The request, in this case, was expressly and voluntarily made, doubtless on account of some supposed advantage to be gained thereby.  Defendant waived the right, and cannot now be heard to complain."  The defense in the case at bar was accidental homicide and doubtless in objecting to an instruction on any grade of crime lower than murder in the first degree, the defendant considered that if the submission was so restricted he was enhancing his chances of an acquittal.  But whatever may have been his purpose, the record shows that he did object to an instruction on manslaughter, and as

section 5115, Revised Statutes 1909, forbids that we should reverse a judgment ''for any error committed at the instance or in favor of the defendant,'' there is no escape from the conclusion that the defendant is not entitled to a new trial for the failure of the court to give an instruction to which he objected at the time.

V. Complaint is made by appellant that the prosecuting attorney, in his closing argument to the jury, was guilty of improper conduct which amounted to prejudicial error. We have examined the remarks complained of, together with the objections made thereto, and find that in each instance when an improper remark was made the court sustained the objection, admonished counsel and instructed the jury not to consider such remark. Considering the nature of the remarks and the action taken by the court we are of the opinion that the conduct of the prosecuting attorney did not constitute prejudicial error, and that there is no merit in this contention.

No prejudicial error appearing in the record, the judgment is affirmed. *Ferriss, P. J.,* and *Brown, J.,* concur.