**STATE of Missouri, Respondent,**

v.

**Loretta Denise YOUNG, Appellant.**

**No. 40825.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 30, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 14, 1980.

Application to Transfer Denied
Feb. 9, 1981.

Robert C. Babione, Public Defender, Leonard W. Buckley, Jr., St. Louis, for appellant.

George A. Peach, Circuit Atty., St. Louis, John Ashcroft, Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

Appeal from a conviction, after a jury trial, of capital murder, § 559.005 RSMo 1975. Punishment was assessed at life imprisonment.

The evidence shows that defendant Loretta Young, a woman of 23 years, was visiting Arthur Brock, her boyfriend and the father of one of her two illegitimate children. Because Mr. Brock had contracted an infection of the heart and endocarditis he was hospitalized at Firmin Desloge Hospital. Mr. Brock and defendant had an affectionate hour and thirty minute visitation. At that point Rosina Inserra entered the hospital room. From the record it was apparent that Mr. Brock and Ms. Inserra had had an amoristic relationship. The two women recognized each other immediately because both worked in the oldest known profession in and around the hotels of downtown St. Louis. Seemingly the two women had been friendly in the past because the defendant testified that Ms. Inserra had driven her on more than one occasion from one hotel to the next in pursuit of their profession. Words were exchanged between the women and they began to fight physically. Eventually the women wrestled out of the room and into the corridor of the hospital. A doctor, making rounds on the floor with a group of medical students, was drawn to the women by the noise they made. The doctor succeeded in separating the women and ordered the defendant to leave the hospital. The defendant complied.

Upon leaving the hospital defendant returned to her home at 1526 Chouteau. The defendant resided there with her mother, brother and two daughters. Defendant testified she was crying and extremely upset when she entered the house. In an attempt to calm herself defendant undressed, took a bath and dressed again in a housecoat. Even after so doing defendant remained greatly upset. Willy Jean Carter, the girlfriend of defendant's brother, noticed that defendant was distraught. The record indicates that defendant and Willy Jean were fairly good friends and that Willy Jean often spent extended periods, several days or even weeks at a time, in defendant's household. In questioning the defendant as to the cause of her unhappiness, Willy Jean was told of Rosina Inserra, the fight and that defendant had been ordered to leave the hospital. Defendant explained she was greatly angered because she believed Rosina Inserra had "won" the fight. Defendant felt she had lost because she had been ordered to leave the hospital while Rosina was allowed to stay. After hearing defendant's story, Willy Jean Carter was ready to assist the defendant in retaliating against Rosina. According to defendant's trial testimony Willy Jean was also interested in taking whatever money Rosina possessed. Eventually the two women agreed they would return to the hospital and kill Rosina Inserra. After so deciding defendant dressed in street attire, removed a .22 caliber pistol from its hiding place in her dresser and placed the gun in the waistband of her pants.

Because neither defendant nor Willy Jean had a car the two women convinced a friend of Willy Jean's to drive them to Firmin Desloge Hospital. The women located Rosina's car, which was parked adjacent to the hospital, and waited for her to return. Af-

ter an hour and thirty minutes elapsed the victim left Arthur Brock. Returning to her car, Rosina was confronted by defendant and Willy Jean Carter. By this time defendant had given Willy Jean the .22 caliber handgun.

The victim was initially anxious when she saw the two women. The defendant attempted to quell Rosina's anxiety. Even though she was actually very upset, defendant apologized in an attempt to gain Rosina's trust. The defendant also told the victim that the two women need not be enemies because Arthur Brock was to blame for the fight. Rosina believed the defendant was sincere. Upon seeing that she had gained Rosina's confidence the defendant introduced her to Willy Jean Carter. After the two women said hello and exchanged pleasantries defendant asked if she would give Willy Jean and herself a ride home. Rosina agreed, believing that she was now among friends. With that the three women climbed into the victim's car.

Before taking defendant and Carter home Rosina stopped at a nearby service station to buy cigarettes. She parked her car directly in front of a window in the service station building. Defendant and Carter remained in the car. Rosina entered the station and asked the attendant, Mr. Louis Sladich, for change of a dollar. Mr. Sladich remembered this transaction because she was attractive and often bought cigarettes at his station. Mr. Sladich, who had an unobstructed view of Rosina's car through a window, testified that the victim was accompanied by two other persons, one being Carter. Having purchased cigarettes Rosina returned to her car and drove off in the direction of Carter's house. As she approached Carter's residence Carter told her to "Just keep on going." At Carter's command Rosina stopped the car in a nearby alley. The defendant testified that at that point Carter shot the victim twice and both Carter and defendant alighted from the car. Defendant ran in the direction of

her home. Carter shot Rosina two more times, picked up the victim's purse, then followed defendant.

██ Defendant's first contention is that "[t]he trial court erred by not giving M.A. I.–CR 6.02 murder: First Degree ...." We cannot agree for a number of reasons. First, because the defendant participated in the murder of Rosina Inserra on April 27, 1977, the applicable instruction for murder in the first degree was MAI–CR 6.19 not MAI–CR 6.02. Second, the issue has not been preserved for appeal because there was neither an objection at trial nor in the motion for new trial. Rule 28.03, *State v. Sykes*, 559 S.W.2d 643, 646 (Mo.App.1977). Third, notwithstanding defendant's allegation to the contrary, no plain error was committed.

██ Generally, "instructional error is not 'plain error' unless the trial court has so misdirected or failed to instruct the jury on the law of the case as to cause manifest injustice." *State v. Harley*, 543 S.W.2d 288, 292 (Mo.App.1976). Because defendant was charged with capital murder the trial court was required to instruct on conventional second degree murder and conventional manslaughter. MAI–CR 6.02, Notes on Use 4.c.2. These instructions were given. However, an instruction on "[m]urder in the first degree may not be submitted unless justified by the evidence." MAI–CR 6.15, Notes on Use 5.[1] In order to support a first degree murder instruction the evidence must show defendant participated in "(1) the unlawful killing (2) of a human being (3) committed in the perpetration of or attempt to perpetrate" (4) first degree robbery. *State v. Handley*, 585 S.W.2d 458, 462 (Mo.1979). In order for first degree robbery to lie, in this case, Rosina's purse must have been unlawfully taken by the use of violence against her person with the intent to steal. It is unnecessary to regurgitate the facts, suffice it to say the evidence clearly supported these elements of first degree robbery. However, all the evi-

---

1. According to MAI–CR 6.19, Notes on Use, the Notes on Use under MAI–CR 6.15 are applica- ble to all first degree murder instructions.

dence indicated that Willy Jean actually took control of Rosina's purse. Therefore, defendant could be held responsible if she either actively participated or knowingly and intentionally aided or encouraged the commission of the robbery. The evidence showed defendant Willy Jean discussed the fact that Rosina had a purse and possibly possessed money. Further, defendant supplied Willy Jean with a gun and induced Rosina into a position where the latter could easily be shot and her purse taken. The inference arises that defendant acted knowingly and intentionally. Thus, the question whether defendant was guilty of participating in the robbery was a question for the jury, *State v. Gilliam*, 351 S.W.2d 723, 726 (Mo.1961), and the evidence would have supported a first degree murder instruction.

However, the trial court's failure to give the first degree murder instruction did not result in manifest injustice. An examination of the record reveals that at the instruction conference defense counsel argued that the evidence of defendant's participation in the robbery of Rosina was so slight that the first degree murder instruction could not be supported. The prosecutor agreed. The trial judge commented that he would give the first degree murder instruction and further conversation followed. Defense counsel continued to insist that the instruction not be given. The trial judge then asked defense counsel, "You are in effect waiving your right to the giving of murder first?" To which the defense counsel replied, "That is correct, Your Honor." Based on this conversation the trial court instructed only on capital murder, second degree murder and manslaughter. Defendant was found guilty of capital murder. The defendant now argues, for the first time on appeal that the trial court had an absolute duty to submit the first degree murder instruction despite defense counsel's

objection to its submission. We hold that when the court failed to instruct on murder one it was merely doing what the defendant insisted that it should do. The action of the court thus clearly fell within the law of self–invited error.[2] *State v. Philpott*, 242 Mo. 504, 146 S.W. 1160, 1162 (Mo.1912).

■ Defendant's second contention is that the trial court erred by submitting MAI–CR 2.12. This instruction allowed the jury to find defendant guilty if she "acted alone or with Willy Jean Carter." Defendant contends that submission of the instruction was error because "the evidence failed to show defendant acted with another in the commission of any crime and because defendant's indictment did not charge her with acting with another." We believe it is unnecessary to reiterate the facts. Suffice it to say that competent evidence admitted at trial showed that she knowingly and intentionally aided Willy Jean Carter in killing and robbing Rosina Inserra. Thus, submission of the instruction was proper. See Notes on Use, MAI–CR 2.10. Further, no allegation of "acting with another" was required in the indictment in order to permit the instruction. *State v. Martin*, 525 S.W.2d 804, 811 (Mo.App.1975). Defendant's second point is without merit.

■ Defendant's third contention is that the trial court erred by failing to give MAI–CR 2.10. Defendant contends that if the trial court was correct in instructing on "acting with another," it was error not to instruct on general responsibility for the conduct of others as stated in MAI–CR 2.10. We do not agree. The failure to submit MAI–CR 2.10 is not error, if there is substantial evidence that defendant was a joint, active participant or actor, so long as there is no evidence that she was only an aider or encourager. MAI–CR 2.10 Notes on Use 4. To render defendant a participant she must have associated herself with

---

**2.** The law of self–invited error was formerly embodied in Rule 26.06. This rule was in effect at the time defendant was tried. However, former Rule 26 was repealed by order of the Missouri Supreme Court effective January 1, 1980. The new Rules do not provide for a rule similar to former Rule 26.06. See Rule 27. Nevertheless, Rule 19.04 requires this court to follow the applicable case law or statutes where no procedure is specially provided by rule.

the criminal venture in some fashion or taken some affirmative action. *State v. Ingram*, 568 S.W.2d 562, 563 (Mo.App.1978). The state's evidence was substantial to establish that defendant was an active participant: Defendant and Carter agreed that they would kill Rosina. Defendant supplied the gun. Defendant lured the victim into the car with a false apology. Carter pulled the trigger. Defendant's activity was sufficient to establish her as a joint actor in this horrible crime. In addition, there was no evidence that defendant was only an aider or encourager. Thus no error was committed by the court's failure to submit MAI–CR 2.10.

 Defendant's fourth contention is that the trial court erred in admitting the testimony of Lou Sladich regarding the identification of Willy Jean Carter. Defendant contends that this evidence was incompetent because it emanated from police procedures which were inherently suggestive. We do not agree. It is well settled that the identification procedures may not be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law in violation of the fourteenth amendment. *Foster v. California*, 394 U.S. 440, 442, 89 S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969), *Stoval v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). Willy Jean Carter's constitutional right to be free of inherently suggestive police procedures is her personal right. *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Defendant does not have standing to assert that Willy Jean Carter's constitutional rights were violated. *Wong Sun v. United States*, 371 U.S. 471, 492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), *Tileston v. Ullman*, 318 U.S. 44, 46, 63 S.Ct. 493, 87 L.Ed. 603 (1943), *Long v. United States*, 360 F.2d 829, 833 (D.C.Cir.1966). Defendant's fourth contention is without merit.

Defendant's fifth allegation is that the trial court erred in overruling her motion to suppress a statement, in which defendant confessed to being involved in the killing of Rosina. Defendant claims that the state failed to meet the burden of proving that she had voluntarily and intelligently waived her rights. We do not agree.

 Because the statements were obtained while the defendant was in custody of the defendant's voluntariness in making them must be proved by a preponderance of the evidence. *State v. Olds*, 569 S.W.2d 745, 751 (Mo.1978). On appeal the trial court's ruling must be viewed in the light most favorable to the state. *State v. Woodward*, 587 S.W.2d 287, 289 (Mo.App. 1979). The trial court has the responsibility to weigh the evidence and judge the credibility of witnesses. *State v. Rapheld*, 587 S.W.2d 881, 886 (Mo.App.1979). Admission of the confession into evidence is a matter of discretion and we will defer to the trial court in ruling on the credibility of witnesses unless manifest error has been committed. *State v. Crowley*, 571 S.W.2d 460, 464–465 (Mo.App.1978).

The record indicates that defendant was questioned twice, and that the second round of questioning produced defendant's confession. Before being questioned for the first time defendant alleges that she had been informed of all her *Miranda* rights except that the state would furnish an attorney for her if she could not afford one. She stated that the room in which she was questioned was small, that the interrogating officer did not cease questioning her when asked and that the officers threatened to put her under a $50,000 bond. Defendant further testified that the police also told her that if found guilty at trial she would be given the electric chair because the victim was the niece of a police officer. Defendant was questioned later the same day by a different officer. Defendant claims she did not initiate this second session and that she had not been informed of her *Miranda* rights. The interrogating officers testified that prior to both questioning sessions defendant was informed of all her *Miranda* rights, including the right to retain an appointed attorney if she could not afford one. The officer denied defendant's other allegations of misbehavior. The officer who presided over the latter session testified that defend-

ant indicated she understood all her rights and was willing to talk. He stated that during the questioning defendant was cooperative, and she requested neither an attorney nor did she demand that the questioning cease.

Where, as in the present case, "the testimony conflicts as to whether the confession was voluntary, admission of the confession into evidence by the trial court is a matter of discretion." *State v. Cook*, 557 S.W.2d 484, 488 (Mo.App.1977). Further, in meeting its burden of proving that the statements were voluntarily given the state need not negate every possible circumstance which could present an issue of fact. *State v. Hamell*, 561 S.W.2d 357, 363 (Mo.App. 1977). Applying the above case law we hold the trial court did not err in determining the state had met its burden of proving by a preponderance of the evidence that the confession was voluntarily given.

Defendant also complains that the court failed to make specific findings as to how it resolved the conflicting evidence at the hearing to suppress the confession. We believe that it is patently ascertainable from the transcript that the trial court did make specific findings as to how it resolved the conflicting evidence. *State v. Monteer*, 467 S.W.2d 48, 52 (Mo. banc 1971).

Defendant's sixth contention is that the trial court erred by overruling her motion for judgment of acquittal because the prosecution failed to make a submissible case of capital murder. Defendant argues that "the state's evidence was: (1) entirely circumstantial; (2) inconsistent; (3) consistent with defendant's theory of her innocence; and (4) incompetent." We do not agree. Defendant's confession was direct, not circumstantial, evidence. *State v. Johnson*, 530 S.W.2d 690, 694 (Mo.1975). Because the state's evidence was not entirely circumstantial the sufficiency of the evidence is determined by assuming to be true all evidence tending to prove guilt, together with all favorable inferences that it can reasonably support. Contrary evidence and inferences are to be disregarded. *State v. Roberson*, 548 S.W.2d 280, 281 (Mo.App.

1977). In so examining the aforementioned evidence we are left with no doubt that the state made a submissible case of capital murder and that the trial court did not err in overruling defendant's motion for judgment of acquittal.

Defendant's final contention raises in her brief in this court, for the very first time, that the trial court erred in allowing the trial to proceed because the jury selection procedure was unconstitutional. Defendant argues that at the time of her trial, the jury selection procedure allowed the courts to excuse any woman who requested an exemption from jury duty. There was no similar exemption for men. Mo.Const. art. 1, § 22(b), § 494.031(2) RSMo. This procedure was found to violate the United States Constitution, *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). However, this argument is doomed because defendant failed to file a timely motion to quash the jury panel. *Lee v. Missouri*, 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979), *State v. Williamson*, 584 S.W.2d 628, 630 (Mo.App.1979).

Judgment affirmed.

GUNN, P. J., and STEPHAN, J., concur.