STATE of Missouri, Respondent,

v.

Dennis J. DAVIS, Appellant.

No. WD 35164.

Missouri Court of Appeals,
Western District.

Nov. 7, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled
and Denied Dec. 26, 1984.

Application to Transfer Denied
Feb. 26, 1985.

Robert G. Duncan, Gladstone, for appellant.

John Ashcroft, Atty. Gen., John J. Oldenburg, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

BERREY, Judge.

Defendant appeals his conviction of robbery in the first degree and burglary in the first degree, wherein he was sentenced to ten and five years respectively in the Missouri Department of Corrections.

Defendant along with three other persons, broke into the Jackson County residence of Mrs. Geraldine Murry, a widow, seventy-one years old, with fractures in her back, about midnight December 1, 1981. They severed the phone line before entering. Mrs. Murry was asleep; she was awakened by a noise and went to the kitchen where she heard a prying sound at the back door. She shouted for the person to stay out and picked up the phone to summon aid but the line was dead.

A person came through the back door and ordered her to lie down on her stomach. She did. The first person who entered was carrying what appeared to be an iron or metal "long pipe." According to the victim the first man was joined by another and for two hours they ransacked her house. Part of the time she was gagged and her head was covered with an orange bathrobe obstructing her vision.

One of the participants told her, "We'll kill you if you don't do what we want you to," and said they had a gun. She asked them not to hurt her dog and they replied, "We won't hurt your dog if you do as we tell you."

She was moved from the kitchen to the bathroom and then to a small hallway. When they left she was on the floor in the hallway, she was told not to move for one-half hour or they would come back and kill her. She watched a clock and waited. As soon as the one-half hour elapsed, she put on galoshes from her front hall closet and fled to the neighbors across the street. The neighbors called the police. She remained there until the police arrived.

The thieves stole several fur coats, her car, silverware, wedding and engagement rings, some money, travelers' checks and odds and ends.

The defendant alleges three points of error.

■ For Point I he alleges that Instruction No. 5 was erroneous as it is at variance with the indictment in that it authorized a finding of guilt if one of the participants was armed with a deadly weapon. The indictment alleged the defendant displayed and threatened the use of what appeared to be a dangerous instrument, (an 18″ piece of pipe).

The defendant did not object to this instruction at the time of trial or in his motion for new trial. The defendant is not now alleging that the indictment is insufficient. The alleged error is not preserved, and we are asked to review under Supreme Court Rule 30.20. It is clearly not plain error such as to require reversal.

This court must find that a manifest injustice or a miscarriage of justice has resulted from the alleged error in the trial court before it can be reviewed as "[p]lain error affecting substantial rights." *State v. Lue*, 598 S.W.2d 133, 137 (Mo. banc 1980).

"[T]here must be sound, substantial manifestation (not perceivable here), a strong, clear showing, that injustice or miscarriage of justice will result if the rule is not invoked." *State v. Meiers*, 412 S.W.2d 478,

480–81 (Mo.1967). Such is not the instant case.

Counsel on appeal is different than trial counsel and the "rule sought to be invoked makes it clear it should not be loosely applied irrespective of the fact there has been a change of attorneys." *State v. Macone*, 593 S.W.2d 619, 620 (Mo. App.1980). There must be plain error affecting substantial rights; discretion is vested in appellate courts to determine if manifest injustice or a miscarriage of justice has resulted. *Macone, supra.* "The variance between the information and an instruction, to be fatal and justify reversal, must be material and prejudicial to the rights of the defendant." *Macone, supra,* at 621. Here Mrs. Murry was threatened and "there was evidence of both fear of immediate injury, and violence." *Macone, supra.*

The variance between the charge and instruction must have resulted in prejudice to the defendant. *State v. Collins*, 519 S.W.2d 362, 364 (Mo.App.1975). There is no prejudice under the facts herein.

The court in *State v. Crossman*, 464 S.W.2d 36, 42 (Mo.1971), reviews *State v. Lusk*, 452 S.W.2d 219 (Mo.1970), cited by defendant herein. The court noted that the defendant in *Lusk* was charged with murder by beating the deceased. The instruction submitted to the jury questioned whether the deceased died by beating or *exposure.* Exposure being an entirely different means of dying than that from an assault by beating, the case was reversed.

Apparently the defendant believes his argument follows *Lusk, supra.* It does not.

Finally, since there was no objection to this instruction at trial or in motion for a new trial, this court is justified in refusing to consider the claimed error. *State v. Johnson*, 606 S.W.2d 655, 656 (Mo.1980); *State v. Mathews*, 328 S.W.2d 642, 644–45 (Mo.1959).

The defendant next contends the trial court erred during voir dire by expanding upon MAI–CR 2d 2.20. The events leading to the judge's comments were at best confusing and deserve discussion.

During voir dire, the defense attorney asked the jury panel, "At this point in time, and by this point I mean in the hearing and trial of this case, right now, at approximately 11:35, would everyone in this jury panel raise their hands if they believe that this defendant is innocent?" From the record, it seems that approximately two panel members responded affirmatively to the question. Defense counsel restated the question in asking, "At this point in time I want to see hands from every man and woman in this panel that believes he is innocent." Nineteen persons raised their hands while seventeen persons did not. Venireman Nobel stated he believed the defendant to be innocent but did not raise his hand because he did not understand the question.

The state then inquired if any of the panel who did not raise their hands the first time had totally prejudged the defendant as guilty and would therefore not make the state prove its case. There was no response to the inquiry.

At the conclusion of the voir dire, the judge made the following comments which defendant alleges are prejudicial:

THE COURT: Ladies and gentlemen of the jury, I am somewhat confused now. I want to see if I can clear up an area that has been gone into. When I read to you from a written instruction that will be given at the close of the case I read this, "The defendant is presumed to be innocent unless and until during your deliberation upon your verdict you find him guilty. This presumption of innocence places upon the State the burden of proving beyond a reasonable doubt that the defendant is guilty."

And I asked—it was a three paragraph instruction. I have again read to you one of those paragraphs and I asked if all of you would follow that instruction of the Court. And nobody said they wouldn't, so I assumed that everybody would.

Now Mr. Krenzky asked you how many of you thought the defendant was

innocent and by that he meant, "Do you presume him to be innocent until the State proves him guilty beyond a reasonable doubt?" I'm now [sic] sure how well you understood that question. And a number of you raised your hands, starting out with Mr. Richberg and Mr. Brown and so forth and there must be, I don't know, maybe a dozen people that said that they did not believe the defendant was innocent.

Now, what you really believe is only important if you are a member of the jury and at the close of the evidence, after you have heard all of the evidence and you have heard the Court's instructions on the law and arguments of counsel and you go into the jury room to deliberate and you arrive at some final belief and that is based on the evidence that you heard, as I said, and the instructions on the law, *and your belief has to be founded upon a feeling that the defendant is guilty beyond a reasonable doubt,* but until that time according to this instruction on the law and it is given in every criminal case in the State of Missouri, the defendant is presumed to be innocent.

Now, I would like to ask those dozen people or so if they mean that they do not presume the defendant to be innocent now and until such time as the State may prove him guilty beyond a reasonable doubt. Now, the State may not prove him guilty beyond a reasonable doubt and that's what you're here to decide and so my question is:

Do those twelve people, maybe there are fourteen of you, I'm not sure, who raised your hand and said that you did not—that you did not believe the defendant to be innocent at this time, do you understand the question, to start with? Let me ask all of you, do you understand the question that is before you? That is, do you presume the defendant to be innocent at this time? Now, is there any of you who does not presume the defendant to be innocent?

(No response.)

THE COURT: Now there is not one hand raised, so what you are telling me is that in accordance with this instruction you do presume the defendant to be innocent unless and until during your deliberations upon your verdict you find him guilty and that this presumption of innocence then accompanies the defendant throughout the trial right up until the time that you go into the jury room to arrive at a verdict.

Do you all understand that and do you agree to that? Is there anybody that doesn't agree with that or that doesn't understand that?

(No response.)

THE COURT: Okay. That's what I wanted to know.

(Emphasized sentence is the crux of defendant's point of error.)

Following this statement and the cautioning instruction the court gave before the noon recess, several veniremen asked questions which were answered. The following occurred as a result of venirewoman Perkins's statement:

VENIREWOMAN PERKINS: I wanted to clarify my answer. I was rather taken back by his question because I had not made any presumption of innocence or guilt. I did understand the instructions but I was basing my—I didn't feel him innocent, I don't also feel him guilty, so I wanted to make sure that my position was clear on it.

THE COURT: Okay. You understand that you are required to presume him innocent?

VENIREWOMAN PERKINS: Until proven—

THE COURT: Right.

VENIREWOMAN PERKINS: Yes, I do.

After the jury left the courtroom, defense counsel attempted to challenge for cause those who had not raised their hands in response to the second question. The state interjected by asking their reason for striking because it was obvious that the persons were merely confused by defense counsel's question.

In support of their interjection, the state recalled the scene as follows: "What we

could see, those of us who were watching was people half-way raising their hand, not raising their hand, changing their minds when the question was repeated, it was obvious."

Defense counsel denied confusion and stated the reason for challenging as being that "they don't have a conviction one way or the other and they are not going to follow the Court's instructions as the Court has already given the instruction as to the presumption of innocence and they should be removed for cause."

The following conversation then occurred between defense counsel and the court outside of the hearing of the jury:

THE COURT: Well, this isn't the first time that has happened in this courtroom within the last month, this is about the third time. This is some new trick question defense lawyers apparently are passing around to each other and I have never, in all the years I have been trying criminal cases, a great many years, I have never heard anybody ask the question that way and these people are confused.

They are all people right off the street. They don't really understand a lot of these questions that are asked of them. Everyone of them, in response to my initial question that I am required by law to read and which I read to them out of MAI–CR Instruction 1.02, a preliminary instruction, everyone of them said in response to that that he would presume the defendant to be innocent unless and until and so forth, during his deliberations he finds him guilty and they understood about the presumption of innocence business. That would be the indication.

Then you come around and phrase it this way, "Do you think he is innocent," and they say, "Do you mean we have already made up our minds," and they don't really understand what we're getting at because they've already been told there is a presumption that he is innocent and it was obviously at first, only three people responded. And then after you started after them again on a different tack [sic] then more people and pretty

soon you had half the people on this panel responding.

Defendant contends that the court told the jury in order to overcome the presumption of innocence, and convict the defendant, all that was necessary was for them to have a *"feeling* that the defendant was guilty beyond a reasonable doubt" and this statement violated MAI–CR 2d 2.20, Note 3. Note 3 provides that, "No other instruction may be given elaborating further upon or attempting to define the presumption of innocence, reasonable doubt or proof beyond a reasonable doubt."

However, under these circumstances, the judge's elaboration on the presumption of innocence may not have been error. "The trial judge necessarily and properly has considerable discretion to exercise in control of the voir dire examination" and a clear indication of the abuse of his discretion must be shown before his ruling will be disturbed. *Olsten v. Susman,* 391 S.W.2d 331, 335 (Mo.1965); *see also State v. Olinghouse,* 605 S.W.2d 58, 68 (Mo. banc 1980); *State v. Yowell,* 513 S.W.2d 397, 403 (Mo. banc 1974); *State v. Scott,* 515 S.W.2d 524, 527 (Mo.1974). Here, the judge was in a position to observe the confusion which arose from defense counsel's series of questions and quite artfully defused the situation. The question may not have been improper, but it did invite confusion which the judge had a duty to remedy when he recognized it.

As defendant did not raise this particular point either at trial or in his Motion for New Trial, he requests this court review the point under the plain error doctrine, Rule 30.20. In support, he cites *State v. Doebert,* 659 S.W.2d 280 (Mo.App.1983), as standing for the proposition that "[f]ailure to follow the Notes on Use applicable to the new instruction is presumptively prejudice." However, " '[p]rejudicial error' and 'plain error' are not synonymous terms and 'prejudicial error' does not inevitably rise to the level of 'plain error.' " *State v. Cass,* 614 S.W.2d 784, 786 (Mo.App.1981). This court cannot find that manifest injustice or miscarriage of justice has resulted from the alleged error. *State v. Lue, supra,* at 137. In *State v. Young,* 610 S.W.2d 8, 12

(Mo.App.1980), citing *State v. Harley,* 543 S.W.2d 288, 292 (Mo.App.1976), the court reaffirmed the general rule that "instructional error is not 'plain error' unless the trial court has so misdirected or failed to instruct the jury on the law of the case as to cause manifest injustice." *See also Cass, supra.*

Even if the trial judge erred in expanding upon the instruction, the overall gist of the statement to the jury was that they abide by the instruction and presume innocence. The instruction was again read to the jury at the close of all the evidence. Any error has been cured. Defendant has not shown the occurrence of a manifest injustice and the burden to do so is on him. *Cass, supra.* The comments were not plain error but necessary to correct the obviously confusing situation.

Though *State ex rel. State Highway Comm'n v. Morganstein,* 588 S.W.2d 472, 476 (Mo. banc 1979), is a civil case its note on invited error is worthy of mention.[1] "The error, if any, in giving answer to the second question was invited by appellant who may not now be heard to complain." While the defendant did not directly request the court's elucidation, the question asked by defendant's counsel confused the venire panel and, therefore, his query invited clarification. As the court noted in *State v. Byrne,* 595 S.W.2d 301, 307–08 (Mo.App.1979), "Thus any error that was committed was invited by defendant and will not be corrected by granting a new trial." Point II is denied.

■ Point III raised by appellant claims plain error because the court failed to grant a mistrial *sua sponte* to remedy the prejudicial effect of the state's closing argument that the victim did not identify the defendant in court because of a motion to suppress.

The victim identified the defendant from seeing him in court in Liberty, Missouri, and her identification was subsequently suppressed. The state produced Neil Whitehurst, "a participant in a robbery and burglary which occurred at the house of Geraldine Murry on December 2, 1981." He testified that the defendant Dennis Davis and two others were with him and that Davis carried a tire tool and used it to "effect entry into the house."

Shirley Scoggins had lived there and knew the layout of the place. She helped locate the silverware, diamonds and furs.

Whitehurst also testified Dennis entered first carrying a tire tool then "Chuck [Coffman] came running around me and I followed him in." Coffman was armed with a shotgun. When Whitehurst entered, the victim was lying tied up on the floor with something orange over her head.

A motion to suppress the identification was sustained by the court "for all purposes." The defendant's counsel in closing pointed out that Mrs. Murry described the man who broke into her home as blond; the defendant was not.

The defendant's counsel first raised the issue of identification of defendant by the victim despite the trial court's ruling that the identification of the defendant was suppressed "for all purposes." The defendant continued his argument by saying that Mrs. Murry did not point out the defendant and say, "That's him, that's him."

Defendant then argued without objection:

The prosecutor can stand up here and point his finger at Dennis Davis, 'That's the man,' but he can't get the victim to do it. He can't get a policeman to do it. . . .

. . . .

. . . She is not going to send an innocent man to the penitentiary, she's not going to point her finger at him and say, 'That's him, that's him,' because she believes in the truth.

1. "The law of self-invited error was formerly embodied in Rule 26.06. This rule was in effect at the time defendant was tried. However, former Rule 26 was repealed by order of the Missouri Supreme Court effective January 1, 1980. The new Rules do not provide for a rule similar to former Rule 26.06. See Rule 27. Nevertheless, Rule 19.04 requires this court to follow the applicable case law or statutes where no procedure is specially provided by rule." *State v. Young, supra,* at 13, n. 2.

The defendant's counsel raised the issue, and baited the assistant prosecuting attorney, by injecting identification of defendant that he had successfully suppressed.

The argument advances a false reason for the victim's failure to testify. The state attempted to counter this argument. The prosecutor in his final argument said, "And he tells you that Geraldine Murry couldn't identify the person who came through the door. Ladies and gentlemen, have you heard of a motion to suppress—." At this point, the court sustained the defendant's objection to the state proceeding further along this line of argument.

The defendant seeks a reversal on this self-invited retalitory argument that was not completed and did not prejudice defendant.

The defendant failed to ask for a mistrial, his objection to the argument was sustained and the state shifted its focus to a different argument. The defendant now seeks relief under plain error Rule 30.20. *State v. Hammonds*, 651 S.W.2d 537, 539 (Mo.App.1983), cited by defendant sets forth the Supreme Court's pronouncement on the subject as contained in *State v. Hurtt*, 509 S.W.2d 14, 15 (Mo.1974):

> In order to invoke the plain error rule there must be a "sound, substantial manifestation ... a strong, clear showing, that injustice or miscarriage of justice will result if the rule is not invoked." [citation omitted] ... When guilt is established by such overwhelming evidence no injustice or miscarriage of justice will result from a refusal to invoke the rule.

In *Hammonds, supra:*

> The assistant prosecuting attorney intentionally misrepresented the facts and informed the jury that the witnesses did not testify because he did [sic] want to perjure himself and the jury should consider that in determining the "believability and credibility" of the witnesses. The comment was not accidental, but was deliberate, and cannot be excused.

Such extreme conduct by the assistant prosecuting attorney is not in the instant case.

The assistant prosecuting attorney attempted to retaliate against defendant's arguments but the court sustained defendant's objection before the full sentence was uttered. In *State v. Hammond*, 578 S.W.2d 288, 290 (Mo.App.1979), the court noted that a prosecuting attorney could go further by way of retaliation, in answering argument of defense than he would be permitted to argue in the first instance. *See also State v. Tiedt*, 229 S.W.2d 582, 588 (Mo. banc 1950).

■ It is improper for counsel to comment or refer to subject matter not in evidence during closing argument, but if such comment is in retalitation to comment of defendant's counsel there is no reversible error. *State v. Kirksey*, 528 S.W.2d 536 (Mo.App.1975). Such is the instant case. There is no plain error and Point III is ruled against defendant.

Judgment affirmed.

All concur.

