**STATE of Missouri, Respondent,**

v.

**Willie HILL, Jr., Appellant.**

**No. 52831.**

Supreme Court of Missouri,
Division No. 1.

Oct. 9, 1967.

Frank Mashak, St. Louis, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, James R. Reinhard, Special Asst. Atty. Gen., Paris, for respondent.

SEILER, Judge.

Defendant was charged with armed robbery with one previous felony conviction, waived trial by jury, was tried by the court and found guilty as charged, sentenced to ten years' imprisonment, and appeals. Defendant is represented here by appointed counsel, who has briefed and argued the case.

Defendant first contends the state failed to make a submissible case. The state's witness Eddie Giles was a route

salesman serving stores for a potato chip company. On August 30, 1966, around 12:30 p. m., in the 1300 block on North Leffingwell, in St. Louis, while working in the van part of his parked truck getting an order together, he was robbed by a man who stepped inside the truck with a pistol in his hand. The light inside the truck was good and Giles described the man as about five feet, ten inches in height, brown skinned, short haircut, wavy hair, shaved off around the forehead, face narrow, small, thin moustache, 25 or 30 years old, weighing 145 to 150 pounds or more, dressed without a hat, in a light blue sport shirt with the tail out, light blue trousers, holding a black derringer style pistol with one barrel on top of the other, with a front sight. Giles said that when he saw the gun he was surprised, but that he wasn't frightened or excited until it was all over. The two stood facing each other four to six feet apart for what Giles estimated as a minute or two and then the man told Giles to turn around, put the pistol to his temple, took the money he had collected on his route from his front trouser pockets ($102.75) and told Giles to lie on the floor until he left. After remaining on the floor a few minutes, Giles left the truck and reported to the police and his employer. A week later Giles identified defendant at the precinct station as the man who robbed him and also identified defendant in the courtroom. Giles also identified at the trial a small black derringer pistol, with stacked barrels, which the police showed him at the station, as being the same size and appearance as the gun used in the holdup.[1] It is apparent from the foregoing that the state produced substantial evidence to support the charge and defendant's contention the state failed to make a submissible case is overruled.

▆▆▆ Defendant next contends that he was illegally arrested and searched. The evidence on this was that on September 6, 1966, seven days after the robbery, two St. Louis police officers accosted defend-

ant on the sidewalk in front of 1121 North Jefferson, around 12:30 p. m. There had been a pattern of four or five robberies in about a week's time in this general area at about the same time of day and in all of these the general description of the perpetrator was approximately the same— a negro male, around 25, five feet ten or eleven inches in height, weight 150 to 175 pounds, brown skinned, using the same sort of gun as in the Giles holdup. The police pulled their car over to the curb. Detective Fowler got out, showed his badge and said "Police", and told defendant he wanted to talk to him. Defendant was wearing a light colored, knit type jersey slipover shirt and pair of slacks, no hat, and the detectives considered he fitted the description of the man they were looking for, although they did not know defendant and had no warrant. Defendant put his right hand under his jersey and stepped backwards into the street. Fowler pulled his revolver, again said "Police", told defendant he was under arrest suspected of robbery, and to remove his hand from underneath his shirt. As defendant did so the officers saw something fall down his left trouser leg and drop into view on the street. It was a loaded .22 caliber stacked derringer, which the officers took into possession, marked, and which Giles identified at the trial as stated above. Under these circumstances, the arrest was legal, either on the ground that the officers had reasonable grounds based on bona fide information communicated to them in their police work, for believing defendant, who appeared to fit the description they had received, was involved in the recent holdups in the same area at about the same time of day, State v. Witt, (Mo.Sup.) 371 S.W.2d 215, 218–219, or on the basis that the response of the defendant in reaching under his shirt and backing off gave the officers grounds to believe defendant intended to breach the peace, State v. Sampson, (Mo.Sup.) 408 S.W.2d 84, 87; Section 84.090, RSMo 1959, V.A.M.S. Following a lawful arrest the

1. The gun was seized by the police at the arrest of defendant, as stated later herein.

officers could have, of course, searched defendant for weapons and thus discovered the gun, although under the facts the gun was actually disclosed by defendant's own act in dropping it on the ground in front of the officers and not through a search at all, State v. Harris, (Mo.App.) 325 S.W. 2d 352, 356. In any event, defendant is in no position to challenge the use of the pistol in evidence, because counsel filed no motion to suppress and further, when the pistol was offered in evidence, stated, "I have no objections". We overrule defendant's contentions as to the alleged illegal arrest and seizure.

■ This case was tried January 4, 1967, after Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and defendant next contends his rights under these decisions were violated in regard to certain incriminating statements which he made to the detectives at the police station. However, this case was tried before the court, not a jury, and the court, after hearing the testimony of the officers, sustained defendant's objections, ordered the statements stricken and said that the court would not "take them into consideration in any respect in reaching a decision in this case". Defendant's counsel argues that even so, the testimony "subconsciously left its indelible imprint in the mind of the Judge", but there is nothing to show this, there is ample evidence in the record to sustain the court's finding without reference to the statements, and we think we should take the court at his word. This contention of defendant is also overruled.

Finally, defendant contends that the method of identification in the police station violated his constitutional rights, citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, which was held, however, in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, to affect cases which involve confrontations for identification purposes conducted in the absence of counsel only after June 12, 1967. The facts on this are that Giles was called by the police to the precinct station the day defendant was arrested. When Giles got to the station "they said that they wanted me to say if I could identify the man that had robbed me". Giles went into a small office where there were two officers, with defendant sitting at one of the officer's desks. Giles testified, "I recognized him before I got in the room * * * I saw him sitting at the side of the desk, and as soon as I saw him I recognized him. * * * I walked in the door, and the first thing I said was, 'This is the man here,' before they could ask me anything." He was cross-examined at length on the details of the holdup, his description of the gun, the length of time he and the robber were confronting each other at the time of the holdup, what kind of a look he had of the man, and the description he gave the police immediately thereafter, without shaking his testimony or disclosing any discrepancies as to identification.

■ Under the evidence, Giles had a good opportunity for observation of the man at the time of the crime and his station house identification was made only seven days later, when his recollection should still have been quite clear. Although this case was tried before the court, defendant did not take the stand or offer any evidence and there was no testimony that the physical features and characteristics which Giles related to the police within minutes after the event did not in fact fit defendant as of that date. Despite the leading and suggestive way in which the police showed defendant to Giles at the station house, there actually is nothing in the particular record before us to indicate that Giles' in-court identification of the defendant as the guilty man was as a result of suggestive influences of the police, or the "one-man line-up" method used, or that it was only fancied. While the method used here by the police has an inherent unfairness and is not to be recommended, it does not appear that it produced on the facts before

us a lack of due process as to this particular defendant, and we therefore overrule this contention.

We have examined those parts of the record required under rule 28.02, V.A.M.R. and find no error therein.

The judgment is affirmed.

HENLEY, P. J., and STORCKMAN, J., concur in result.