STATE of Missouri, Respondent,

v.

Douglas E. MOORE, Appellant.

No. KCD 29117.

Missouri Court of Appeals,
Kansas City District.

Dec. 27, 1978.

Mark D. Johnson, Platte City, for appellant.

John D. Ashcroft, Atty. Gen., Daniel F. Lyman, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

SOMERVILLE, Presiding Judge.

Did the trial court err by refusing to grant a mistrial because of a question put by the state, even though it went unanswered? Did the trial court err by refusing to give an "accomplice" instruction offered by defendant which differed from MAI–CR 2.01? Did the trial court err by failing to give a manslaughter instruction in a felony murder case? These questions arise by way of points on appeal in a jury tried case resulting in defendant's conviction of first degree murder (felony-murder—attempted robbery), Section 559.010, RSMo 1969, and imposition of a life sentence.

On the basis of the evidence presented, the jury which tried defendant was justified in finding beyond a reasonable doubt that on *January 9, 1975*, defendant and four companions shot and killed the proprietor of the Kentucky Liquor Store, 31st and Benton, Kansas City, Missouri, during the attempted perpetration of a robbery. Defendant's trial commenced on *May 10, 1976*, and concluded on *May 12, 1976*. Later on, the importance of the dates which have been underlined will become self-evident.

■ Review of the three points raised on appeal is clouded at the very outset by the fact that defendant's motion for a new trial was untimely filed. Although a guilty verdict was returned by the jury on May 12, 1976, and defendant was granted an extra twenty days in addition to the ten days prescribed by Rule 27.20(a) within which to file his motion for a new trial, the same was never filed until June 14, 1976, some three days late. With a pattern of consistency that bespeaks of a firm commitment, untimely filed motions for new trial are held to be nullities, and, so construed, preserve nothing for appellate review. *State v. Collett*, 542 S.W.2d 783, 785 (Mo. banc 1976); *State v. White*, 439 S.W.2d 752, 753 (Mo. 1969); *State v. Olinger*, 396 S.W.2d 617, 621 (Mo.1965); and *State v. Hamilton*, 391 S.W.2d 872 (Mo.1965).

■ Defendant's only hope for salvaging the three points for appellate review is to bring them under the benevolent auspices of the "plain error" provisions of Rule 27.20(c). Defendant faces a formidable task as there is no such thing as "plain error" per se within the meaning ascribed to the term by Rule 27.20(c). The "bench mark" of "plain error"—error which works a "manifest injustice or miscarriage of justice" (Rule 27.20(c))—is not easily discernible. Even the most flagrant, undisputed examples of error are not necessarily subject to being characterized as "plain error" within the meaning of Rule 27.20(c). Thus, no talismanic method exists for determining "plain error". In fact, "plain error" is such a highly elusive term that it does not readily lend itself to being succinctly defined or isolated by the use of judicial platitudes. As a practical matter, the existence or non-existence of "plain error" demands review on a case to case basis to determine whether "manifest injustice or miscarriage of justice" has resulted in any given case. *State v. Patterson*, 443 S.W.2d 104, 107 (Mo. banc 1969). The three issues raised by defendant on appeal will be discussed, in order, in the context just mentioned.

■ Defendant's first point focuses on the following question, which went unanswered, but which was asked of one of defendant's witnesses by the state on cross-examination: "Is it not true that you are currently being represented by the Jackson County Public Defender?" Before the witness had time to answer, defense counsel objected to the question and asked for a mistrial. The objection was sustained but

the request for a mistrial was denied. By reason of the fact that defendant was also represented by the Jackson County Public Defender's Office, he adroitly mixes sweeping constitutional principles with certain strained conclusions and syllogizes that the unanswered question, from his standpoint, worked a "manifest injustice or miscarriage of justice". This court would have to resort to judicial prestidigitation to place this *unanswered question* in the ranks of "plain error". The idea that it worked a "manifest injustice or miscarriage of justice" defies credulity. An honest sense of outrage on the part of defense counsel permeates defendant's first point by reason of the following circumstance. The assistant prosecuting attorney who handled this trial for the state also represented the state at a previous trial afforded defendant on the same charge which resulted in a "hung jury". During the previous trial the same controversial question was the subject of a "protective order" and that state was prohibited from asking it on cross-examination. Although the present conduct of the state, in view of what transpired at the previous trial, is not to be condoned, it cannot substitute for the requisite finding of "plain error" necessary to entertain defendant's first point on appeal.

■ Defendant's second point is directed toward the trial court's refusal to give a requested "accomplice" instruction, the thrust of which was that the jury should receive the uncorroborated testimony of an accomplice with great caution. This instruction was innovative in the sense that it was strictly the handiwork of defense counsel and a total stranger to MAI–CR. It was in the nature of a cautionary instruction on the believability of a particular witness or class of witnesses and, as such, expressly forbidden by paragraph 2 of the "Notes on Use" appended to MAI–CR 2.01 "Duties of Judge and Jury": "Except as may be specifically provided for elsewhere in MAI–CR, no other or additional instruction may be given on the believability of witnesses, or the effect, weight or value of their testimony. Without limiting the foregoing, no instruction may be given to the effect . .

that the testimony of any one witness or class of witnesses, when uncorroborated, must be received with great caution or must be weighed any differently than that of other witnesses." MAI–CR 2.01 was read to the jury in this case at the appropriate time. As refusal of the cautionary instruction requested by defendant would not have constituted error if properly preserved, it would be the height of judicial inconsistency to succumb to defendant's suggestion that its refusal worked a "manifest injustice or miscarriage of justice" and entitled it to be reviewed as "plain error" under Rule 27.20(c).

■ Defendant's final point charges the trial court with error for failing to submit manslaughter to the jury in this first degree murder (felony-murder—attempted robbery) case involving a homicide which occurred on *January 9, 1975*, and which went to trial on *May 10, 1976*. Failure to instruct a jury on the "law of the case" may be reviewable as "plain error" under Rule 27.20(c) if a "manifest injustice or miscarriage of justice" results. *State v. Auger*, 434 S.W.2d 1, 4 (Mo.1968); and *State v. Johnson*, 559 S.W.2d 756, 758 (Mo.App. 1977).

■ An obsession with chronology is unavoidable when addressing defendant's final point because of the metamorphic nature of instructing juries in homicide cases as reflected by the "Notes on Use" appended to MAI–CR 6.02 Murder: First Degree (Conventional), effective March 1, 1975, and the "Notes on Use" appended to MAI–CR 6.02 Capital Murder, effective September 28, 1975. To support his third and final point defendant relies upon paragraph 4.c.2. of the "Notes on Use" appended to MAI–CR 6.02 Capital Murder, effective September 28, 1975, to wit: "The court *must* give an instruction on manslaughter (MAI–CR 6.08) in all cases where any higher homicide offense, conventional or felony-murder, is submitted to the jury. This follows from the nature of manslaughter. *State v. Williams*, 442 S.W.2d 61 (Mo. banc 1968), modified in one respect by *State v. Ayers*, 470

S.W.2d 534 (Mo. banc 1971), and extended by *State v. Stapleton, supra.* [518 S.W.2d 292 (Mo. banc 1975)] . . ." Defendant reasons that since the September 28, 1975, revisions to MAI–CR 6.02 and the "Notes on Use" appended thereto were in effect at the time of his trial which began on May 10, 1976, and culminated in a guilty verdict on May 12, 1976, paragraph 4.c.2. of the "Notes on Use" was a positive and unequivocal mandate to the trial court to submit manslaughter to the jury via MAI–CR 6.08. Defendant's reasoning is beset with a glaring fallacy. The following "NOTE" is appended to MAI–CR 6.02 Capital Murder, effective September 28, 1975: *"Refer to Instruction 6.02 Murder: First Degree on page 6–3, of this book, regarding murder submissions involving occurrences before September 28, 1975."* (Emphasis added.) This "NOTE" is taken at face value and it is assumed that it means what it says. Thus, the *date of the occurrence* rather than the *date of the trial* assumes paramount and controlling importance regarding homicides occurring before September 28, 1975. Caveat a. appended to the "Notes on Use" in conjunction with MAI–CR 6.02 Murder: First Degree, effective March 1, 1975, provides, in part, as follows: "Where *felony-murder* either in the first or second degree is the *only* murder submitted (that is, when conventional murder under MAI–CR 6.02 or 6.06 is not submitted) the above rules will not be applied, so that lesser offense instructions will not be given *automatically.* Ordinarily, where there is sufficient evidence to warrant the giving of a felony-murder instruction, there will be no evidence to support the submission of a lesser offense. Under such circumstances only felony-murder will be submitted. See the following cases and those cited therein: *State v. Hopper,* 71 Mo. 425 (1880); *State v. Nasello,* 325 Mo. 442, 30 S.W.2d 132 (1930); *State v. Kauffman,* 335 Mo. 611, 73 S.W.2d 217 (1934); *State v. Taylor,* 421 S.W.2d 310 (Mo.1967); *State v. Glenn,* 429 S.W.2d 225 (Mo. banc 1968); *State v. Thomas,* 440 S.W.2d 467 (Mo.1969). . . . But in the absence of evidence to justify it a lesser offense instruction should not be given where felony-murder alone is submitted. *State v. Ford,* 495 S.W.2d 408 (Mo. banc 1973)." The trial court apparently felt compelled to adhere to the foregoing admonition since the homicide in question occurred before September 28, 1975, and there was not one iota of evidence that it occurred other than during an attempt to perpetrate a robbery. A confluence of evidence and substantive law, comporting with Caveat a., supra, left the trial court without any viable option as to whether or not manslaughter should be submitted to the jury. As there was no evidence that the homicide occurred other than during an attempt to perpetrate a robbery, then it inexorably followed that there was no evidence to support a submission of manslaughter. As pungently stated in *State v. Burnett,* 365 Mo. 1060, 293 S.W.2d 335, 343 (banc 1956), *cert. denied,* 352 U.S. 976, 77 S.Ct. 367, 1 L.Ed.2d 326 (1957), and illustrative of the rationale undergirding Caveat a., supra, "[o]n the facts shown the jury could be authorized to find only one of two verdicts, namely, a conviction of murder in the first degree, or an acquittal." In *State v. Tyler,* 556 S.W.2d 473, 475 (Mo.App.1977), involving a homicide occurring prior to September 28, 1975, and submitted to the jury solely on felony-murder, Caveat a., supra, was relied upon to absolve the trial court of error for not giving a requested manslaughter instruction. Chronology dictates the same result in the instant case and any inclination to probe into substantive principles of law surrounding the giving or non-giving of manslaughter instructions in homicide cases is effectively suppressed by reason of the mandatory status of the "Notes on Use" appended to the respective MAI–CR instructions. A fundamental maxim, patent as it may be, is risked—that which is not error, even though properly preserved for appellate review, can never rise to "plain error" for purposes of review under Rule 27.20(c).

Judgment affirmed.

All concur.