STATE of Missouri, Respondent,

v.

Irving J. BERRY, Jr., Appellant.

No. 61750.

Supreme Court of Missouri,
En Banc.

Dec. 15, 1980.
Rehearing Denied Jan. 13, 1981.

Stephen J. Murphy, Affton, for appellant.

John Ashcroft, Atty. Gen., Edward F. Downey, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Convicted of first degree robbery, class B rape and class B kidnapping, defendant's punishment was assessed by the jury at life, 15 years, and 15 years imprisonment, respectively. Determining that defendant was a dangerous offender under § 558.016, RSMo 1978, the trial court ordered sentences of consecutive terms of 30 years for the rape and 25 for the kidnapping. A life sentence having been imposed, the cause falls within the exclusive appellate jurisdiction of this Court. Art. V, § 3, Mo. Const.

As error defendant alleges the trial court improperly (1) permitted the State to withhold from defendant a photograph of one of the lineups in which defendant participated; (2) denied defendant's motion to suppress evidence illegally seized; (3) denied defendant's motion to suppress the prosecutrix's in-court identification, tainted by unduly suggestive lineup procedures; (4) permitted objectionable testimony by the prosecutrix's sister; and (5) imposed an extended term of imprisonment under § 558.016, RSMo 1978, sans the hearing mandated by § 558.021, RSMo 1978.

On February 2, 1979, at 6:45 p. m., the victim parked her automobile under a street light near her apartment building at the intersection of Pershing and Newstead in the City of St. Louis. While removing a bag of groceries she was accosted by defendant who menaced her with a chrome-plated object appearing to be a gun with a narrow six inch barrel, stating he intended to rob her. Ordering her to get in the car, he forced her to drive to an empty lot, then told her to stop. After taking her jewelry and money, defendant forced her to crawl into the back seat. During this time the dome light in the car was on and the assailant stood part outside and part inside the car, hovering over the victim. He demanded she undress and after much protest she removed her shirt and pants. When she refused to undress further, defendant threatened to kill her, striking her head several times with the weapon and threatening to hit her with a soda bottle. Finally the victim disrobed fully and defendant raped her.

Subsequently, in accordance with her assailant's instructions, the victim dressed and started the car. When she backed the automobile into the alley, it became stuck in the snow and remained so notwithstanding repeated attempts to move it. Eventually they abandoned the car and while leaving the alley, the victim consciously sized up defendant. Reaching Newstead Avenue defendant threatened his victim against calling the police and then fled. She crossed the street to a service station where she telephoned for help and her sister came to pick her up.

On the evening of February 9, 1979, Laird Kelley, an off-duty police officer working as a security guard in a posted area for Kingsberry Place Street and Terrace Association, observed movement in some shrubbery. As Kelley went to to investigate, defendant darted from the bushes and during the case that followed, tossed what appeared to be a gun into the snow. Cornering him in a dead end driveway, Kelley placed defendant under arrest for trespassing on Kingsberry Place. Recovering the discarded object, the officer discovered it was a large cigarette lighter shaped like a gun. Kelley also noted that defendant fit the description of a suspect in several recent nearby robberies.

■ At the outset, we examine respondent's contention concerning procedural deficiencies in appellant's brief. When initially filed, the argument portion omitted transcript page references supportive of appellant's factual allegations, required by Rule 30.06(h). While such failure can preclude appellate review of the merits, *State v. Laususe*, 588 S.W.2d 719, 722 (Mo.App. 1979), this result will not obtain because appellant by leave has submitted a correct-

ed brief reaching the minimum standards of Rule 30.06. See *Morris v. Reed*, 510 S.W.2d 234, 238 (Mo.App. 1974).

■ Defendant first complains of the State's alleged failure to relinquish a photograph of an original lineup in which defendant appeared with one Larry Williams. At the pretrial hearing on the motion to suppress the victim's identification testimony, Williams testified that he was initially identified in a lineup as the assailant which he learned involved a rape case occurring on February 2, 1979. He further asserted that when it was ascertained that he had been incarcerated on that date, he was returned for another lineup in which defendant participated and defendant was identified as the attacker in a rape on February 2, 1979. Williams did not know who made the identification in the original lineup, but defendant alleges in his brief he was denied a photograph taken of that lineup. Defendant filed two motions for new trial. The first, October 5, 1979, the final day for a timely motion, was silent on this point. Defendant filed a second motion October 11, raising as additional error, the prosecutor's withholding of the photograph. The untimely motion for new trial was a nullity, preserving nothing for appellate review. *State v. Collett*, 542 S.W.2d 783, 785 (Mo. banc 1976); *State v. Moore*, 575 S.W.2d 253, 254 (Mo.App. 1978); *State v. Harley*, 543 S.W.2d 288, 292 (Mo.App. 1976).[1] Moreover, the point may not be saved by designating the second motion an "amendment" to the first thereby permitting its filing date to relate back to October 5. See, *Lloyd v. Garren*, 366 S.W.2d 341, 344 (Mo. 1963). Nevertheless, we examine for plain error to consider whether the alleged error rises to the level of "manifest injustice or miscarriage of justice." Rule 29.12.

---

1. *Defendant suggests as excuse for his tardiness, late receipt of a police report disclosing the photograph's existence. Assuming arguendo that late receipt of this report justifies the tardiness of the second motion, see State v. Harley, 543 S.W.2d 288, 292 (Mo.App. 1976), nonetheless we find defendant's allegation meritless. The report substantiates that a photo-*graph was taken of a lineup including Larry Williams and defendant. However, the report confirms the State's allegation that the victim in the case at bar did not view that lineup. Instead, three other victims viewed this lineup, and Williams testified that he and defendant appeared together twice which Williams described as "one lineup."

A prosecutor must, upon request, disclose to defense counsel any exculpatory evidence "which tends to negate the guilt of the defendant as to the offense charged ...." Rule 25.32(A)(9) (1979), now Rule 25.03(A)(9) (1980); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *Lee v. State*, 573 S.W.2d 131, 133 (Mo.App. 1978); *State v. Brooks*, 551 S.W.2d 634, 655 (Mo.App. 1977), *cert. denied*, 434 U.S. 1017, 98 S.Ct. 736, 54 L.Ed.2d 763 (1978). For nondivulgence to result in reversal, the evidence must be material and the nondisclosure prejudice defendant's rights. *Lee v. State, supra: State v. Brooks, supra*. At trial, defendant sought discovery of a photograph allegedly taken of a lineup in which he and Larry Williams appeared,[2] contending it would discredit the victim's identification testimony. However, at the suppression hearing the victim testified she viewed only one lineup and selected only the defendant as her assailant. She further identified State's Exhibit 1 as a photograph depicting the lineup she viewed. Williams does not appear in this photograph. Officer James Brawley confirmed the victim's identification of State's Exhibit 1 and her testimony respecting her view of the lineup. Hence, defendant apparently sought a photograph depicting a lineup viewed by someone other than the victim he attacked and not germane to defendant's contention of fallacious identification. It would not have discredited the victim's identification testimony. It could only have corroborated Williams' testimony that he and defendant appeared in the original lineup. We hold therefore that the State's alleged refusal to relinquish the photograph cannot be said to have prejudiced defendant and the trial court's action was not plain error.

Defendant next contends his person and the gun-like cigarette lighter should have been suppressed as tainted by a warrantless arrest made without probable cause.[3] A warrantless arrest requires a showing of probable cause. When making the arrest, the officer must have known facts sufficient for a prudent person to believe defendant had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *State v. Maxwell*, 502 S.W.2d 382, 386 (Mo.App. 1973). The record is replete with such circumstances. As previously discussed, the arrest was made after a chase commencing when Officer Kelley observed defendant crouched in some bushes in a posted area. At the time, Kelley was working extra hours in an area where several robberies had recently occurred. His suspicions were aroused by defendant's hiding in the bushes, fleeing when he approached and tossing an object appearing to be a gun into the snow. This activity justified the officer's approach to investigate. *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921,

2. There is conflict in the record as to whether any such photograph existed or if so was in the custody of the State. This conflict could be said to have been resolved favorably for the State by the trial court's ruling. However, for our purposes we will assume such a photograph existed.

3. If it were determined that defendant's arrest was illegal, the suppression sought by defendant was not available. During the chase by Officer Kelley, defendant tossed his cigarette lighter into the snow, where it was subsequently retrieved by the officer. Thus the lighter was not discovered through an "unreasonable search of defendant." When, as here, a suspect abandons property, dropped during a chase, and it is found, he cannot claim an unconstitutional invasion of his rights. *State v.*

*Boykins*, 434 S.W.2d 484, 485–486 (Mo. 1968); *State v. Hill*, 419 S.W.2d 46, 48 (Mo. 1967); *State v. Jefferson*, 391 S.W.2d 885, 888 (Mo. 1965); *State v. Hall*, 534 S.W.2d 508, 510 (Mo. App. 1976).

As to the suppression of defendant's body, it is unclear what defendant requests. If he is asserting that an illegal arrest deprives the trial court of jurisdiction to try the case such assertion must clearly fail. See *State v. Moore*, 580 S.W.2d 747, 749 (Mo. banc 1979). If, on the other hand, he is asserting that his face is a species of evidence suppressible as "the fruit" of an illegal arrest, this contention must also be rejected. See *United States v. Crews*, 445 U.S. 463, 477, 100 S.Ct. 1244, 1253, 63 L.Ed.2d 537 (1980).

1922, 32 L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *State v. Rankin*, 477 S.W.2d 72, 75 (Mo. 1972).

When defendant was caught, the officer recognized he fit the description of a suspect in several recent robberies. Moreover Officer Kelley caught defendant flagrante delicto, trespassing in a neighborhood posted private. When an officer witnesses a crime, albeit a misdemeanor,[4] in which the perpetrator acts in a highly suspicious manner and when cornered is recognized as fitting the description of a suspect in recent felonies, that officer has probable cause for a warrantless arrest. See, *State v. Jefferson*, 391 S.W.2d 885, 888 (Mo. 1965); *State v. Moore*, 580 S.W.2d 747, 750 (Mo. banc 1979); *State v. Robinson*, 484 S.W.2d 186, 190 (Mo. 1972); *State v. Hill*, 419 S.W.2d 46, 47 (Mo. 1967); *Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972).

■■■ Defendant next objects to the trial court's denial of his motion to suppress the victim's in-court identification as tainted by an unduly suggestive lineup identification. He argues the evidence showed that when viewing the lineup, the victim selected defendant only after learning that her first choice had an airtight alibi, and hence, the lineup was unnecessarily conducive to an irreparably mistaken courtroom identification.[5] While prior to trial defendant moved to suppress the in-court identification and renewed this claim in his motion for new trial, he failed to object at trial when the victim was asked to identify her assailant. "[W]hen a pre-trial motion to suppress identification testimony is made and overruled, timely objection to the identification testimony must be made during the trial ... in order to preserve the issue for purposes of appellate review." *State v.*

*White*, 549 S.W.2d 914, 917 (Mo.App. 1977); *State v. Holland*, 534 S.W.2d 590, 591 (Mo. App. 1976). Though defendant's claim of error is waived for failure to object, we exercise our discretion, as in the prior point, to examine for plain error. Rule 29.12. Defendant bears the burden of demonstrating the putative error rose to the level of manifest injustice or a miscarriage of justice. *State v. Richards*, 536 S.W.2d 779, 788 (Mo.App. 1976).

■■■ The State's evidence (testimony by the victim, her sister and an officer) showed that the victim viewed only one lineup and immediately identified defendant as her assailant. However, assuming arguendo that the lineup identification was unduly suggestive because the victim selected defendant as her second choice, her in-court identification was not thereby rendered necessarily inadmissible. When an in-court identification is made upon a recollection independent of pretrial identification procedures, the in-court identification is proper. *United States v. Crews*, 445 U.S. 463, 473, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980). Consideration must be given to the presence of an independent factual basis for the identification and a positive courtroom identification. *State v. Parker*, 458 S.W.2d 241, 244 (Mo. 1970); *State v. White*, 549 S.W.2d 914, 917 (Mo.App. 1977); *State v. Holland*, 534 S.W.2d 590, 592 (Mo.App. 1976); *State v. Rutledge*, 524 S.W.2d 449, 456 (Mo.App. 1975).

During perpetration of the crimes, defendant was in the victim's presence for thirty to forty minutes. She first observed him under a street light as she got out of her automobile. Her second opportunity for a good look at defendant occurred as he hovered over her in the car with the dome light on. Finally, as they walked down the alley, the victim consciously observed and

---

4. See § 569.150, RSMo 1978, Trespass in the second degree.

5. In its brief, the State points out that defendant's argument misstates portions of the transcript, violative of Rule 30.06(c). We have per-

used the transcript and found justification in the States criticisms. However, we decline to invoke sanctions on the assumption the misstatement was a mistake, not intentional.

painted a mental picture of defendant as the light from a street pole reflected from the snow. It has been aptly noted that "Virtually no other crime offers the opportunity for observation of the perpetrator as the crime of rape." *Grant v. State*, 446 S.W.2d 620, 622 (Mo. 1969). When questioned by the police after the rape, the victim gave a detailed description of her attacker matching defendant's appearance.[6] At trial she unequivocally and positively identified defendant as her assailant. Hence it is clear the victim's in-court identification rested on an independent recollection of her protracted encounter with the attacker and we cannot charge the trial court with error, a fortiori, not plain error, by its admission of the identification testimony.

Defendant's next allegation of error merits little discussion. At trial, the victim's sister testified that the victim "looked like she had been dead" when the sister picked her up at the service station, and that the victim attempted to leave upon viewing the lineup. Defendant objected to this testimony on grounds of relevancy and prejudice.[7]

 Admission of evidence complained of as prejudicial or inflammatory

rests within the sound discretion of the trial judge. The standard of relevance is the main criterion. *State v. Thresher*, 350 S.W.2d 1, 6–7 (Mo. 1961); *State v. McCabe*, 512 S.W.2d 442, 444 (Mo.App. 1974). Relevancy is found if the evidence logically tends to support or establish a fact in issue. *State v. Moore*, 435 S.W.2d 8, 11 (Mo. banc 1968). Because defendant pled not guilty, he put "in issue all facts constituting the corpus delicti as well as the defendant's criminal agency." *Id.* at 11–12. Hence, to establish guilt, all evidence related to any element of the crime of forcible rape became relevant. The victim's condition after the rape was pertinent to the issue of force, and her flight upon viewing defendant in a lineup was proper for jury consideration in connection with the identification testimony. The trial court did not abuse its discretion admitting such evidence.

 Defendant finally contends the trial court failed to follow required statutory procedures when imposing extended terms of imprisonment upon the rape and kidnapping convictions.[8] Pursuant to § 558.016, RSMo 1978, at a sentencing hearing the trial judge found defendant had previously

6. Defendant makes much of the fact that the victim described her assailant as wearing prescription eyeglasses, though his evidence showed that defendant had never worn glasses. This testimonial conflict was resolved by the jury. Further, the alleged conflict was diluted by the victim's testimony that her attacker wore glasses initially, but removed them before reaching the alley.

7. Defendant also maintains in his argument that the sister's testimony "was largely hearsay," though he fails to inform this Court in what respect the particular conduct and/or statements of the victim constituted hearsay. He further fails to assert this error in his point relied on. Since the victim was available and subject to cross-examination on her sister's testimony, we are not shown how prejudice could have resulted. See, *State v. Robinson*, 484 S.W.2d 186, 189 (Mo. 1972).

8. Pertinent provisions of the Dangerous Offender Statutes are as follows:
§ 557.036.3:
If the jury returns a verdict of guilty and declares a term of imprisonment as provided

in subsection 2 of this section, the court shall proceed as provided in subsection 1 of this section except that any term of imprisonment imposed cannot exceed the term declared by the jury unless: ... (2) The defendant is found to be a persistent or dangerous offender as provided in section 558.016, RSMo, in which case: (a) If he has been found guilty of a class B, C, or D felony, the court shall proceed as provided in section 558.016, RSMo; or (b) If he has been found guilty of a class A felony, the court may impose any sentence authorized for a class A felony. § 558.016:
1. The court may sentence a person who has pleaded guilty to or has been found guilty of a class B, C, or D felony to an extended term of imprisonment if it finds the defendant is a persistent offender or a dangerous offender.
\* \* \* \* \* \*
3. A 'dangerous offender' is one who: (1) Is being sentenced for a felony during the commission of which he knowingly murdered or endangered or threatened the life of another person or knowingly inflicted or attempted or threatened to inflict serious physical inju-

been convicted of a dangerous felony, forcible rape (see § 556.061(8), RSMo 1978) and defendant had "knowingly murdered or endangered or threatened the life of another person or knowingly inflicted or attempted or threatened to inflict serious physical injury on another person.", (see § 558.016.-3(1), RSMo 1978). Having determined defendant was a dangerous offender, the trial judge sentenced him to terms of 30 years on the rape and 25 on the kidnapping. Defendant complains that the trial judge judicially noticed the trial proceedings (in which he had just presided) of this cause to support his finding under § 558.016.3(1), and maintains that § 558.021.1(2), RSMo 1978, mandates a second hearing in which the State must *again prove* certain elements of crime, i. e., "the threat to inflict serious bodily injury on another," as well as additional information bearing on the issue of sentence.[9]

During trial, the victim testified that defendant struck her with the gun-like cigarette lighter, menaced her with a soda pop bottle and threatened to kill her. She was in fact extensively cross-examined by the defense on many aspects of the case, including the violence and threats of violence. In convicting defendant of robbery in the first degree, the jury necessarily found he threatened the victim under the robbery submission[10] and resorted to "forcible compulsion" to commit the rape.[11] Additionally, the trial and the sentencing hearing occurred within 10 days before the same tribunal, involving the same prosecutor and defense counsel. Under § 558.021.3, at the sentencing hearing, "both the state and the defendant [were] permitted to present *additional information bearing on the issue of sentence*." (Emphasis added.) There is no requirement that any or all prior trial testimony be repeated. Hence it cannot be said that the trial court's judicial notice of its prior proceedings and consideration of evidence adduced there was violative of the statutory procedures or defendant's constitutional rights. See, *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *State v. Brooks*, 551 S.W.2d 634, 652–653 (Mo.App. 1977), *cert. denied*, 434 U.S. 1017, 98 S.Ct. 736, 54 L.Ed.2d 763 (1978).

Section 558.021, RSMo 1978, was enacted to comply with the mandates set forth in *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). See, *The New Missouri Criminal Code: a Manual for Court Related Personnel*, § 3.4, page 8. There, the Supreme Court held that when the imposition of an extended term goes

ry on another person; and (2) Has been previously convicted of a class A or B felony or of a dangerous felony.
§ 558.021:
1. The court shall not impose an extended term under section 558.016 unless (1) The indictment or information, original, amended or in lieu of an indictment, pleads all essential facts warranting imposition of an extended term; and (2) After a finding of guilty or a plea of guilty, a sentencing hearing is held at which evidence establishing the basis for an extended term is presented in open court *with full rights of confrontation and cross-examination*, and with the defendant having the opportunity to present evidence; and (3) The court determines the existence of the basis for the extended term and makes specific findings to that effect.
2. Nothing in this section shall prevent the use of presentence investigations or commitments under sections 557.026 and 557.-031, RSMo.

3. At the sentencing hearing both the state and the defendant *shall be permitted to present additional information bearing on the issue of sentence.* (Emphasis added.)

9. Defendant does not allege error respecting the finding of his previous conviction, as this was adequately proved at the sentencing hearing by court records of defendant's prior plea of guilty.

10. The jury was instructed that, to find defendant guilty of robbery in the first degree, it must find that in stealing from the victim defendant "threatened the immediate use of physical force on or against" the victim and "displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument ..."

11. To convict of rape, the jury was instructed they must find defendant had sexual intercourse with the victim "without her consent by the use of forcible compulsion ..."

beyond finding guilt of the felony and involves making new findings of fact, due process requires those safeguards essential in a criminal prosecution. *Specht*, at 608–610, 87 S.Ct. at 1211–1213. In the case at bar, it was determined at trial that defendant acted in a violent manner under § 558.016, RSMo 1978. Since the question of defendant's violence and the offense charged did not require a new finding of fact, it was not incumbent on the State to present additional evidence on the issue and the trial court could properly take judicial notice of its earlier proceedings in this very cause. This is not to say that a defendant may be foreclosed from presenting "additional evidence on the issue" but the trial court may not be condemned for proceeding as it did.

Judgment affirmed.

DONNELLY, WELLIVER, MORGAN and HIGGINS, JJ., concur.

BARDGETT, C. J., concurs in part and dissents in part in separate opinion filed.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, Chief Justice, concurring in part and dissenting in part.

I concur in the affirmance of the conviction but dissent from that part of the principal opinion which holds that the trial court need not comply with the statutory procedures required by and set forth in § 558.021, RSMo 1978, before imposing an extended term of imprisonment.

The power of the trial judge to discretionarily impose an *additional* term of imprisonment to the punishment assessed by the jury is new in Missouri. It subjects a defendant to the discretionary assessment of punishment by the trier of facts—here the jury—and then to *additional* imprisonment to be imposed within the discretion of the judge. This is a very substantial power, about which the jury is not even informed. In this case the exercise of that power

added twenty-five years of consecutive imprisonment to the jury verdict.

The general assembly recognized that § 558.016, RSMo 1978, added substantially to the discretionary power of a trial judge and imposed upon a defendant risks he had not previously been subjected to. Previously a judge had no power to increase the term of imprisonment over the jury assessment. The general assembly made it perfectly clear that the trial judge had no authority to impose an additional term of imprisonment unless that judge complied with the statutorily mandated procedure.

The statute, § 558.021, states in part:

1. The court *shall not* impose an extended term under section 558.016 unless

(1) ...

(2) *After* a finding of guilty [the jury verdict] ..., a sentencing hearing is held at which evidence establishing the basis for an extended term is presented in open court *with full rights of confrontation and cross-examination*, and with the defendant having the opportunity to present evidence; and

(3) .... (Emphasis added.)

Admittedly, subparagraph 2 of this statute was totally ignored. The issue is not whether the trial judge is entitled to remember what he previously heard during the course of the case or take "judicial notice" of such evidence. Of course he will remember it and it obviously will play some part in his judgment on the matter. But the statute *requires* that the defendant be afforded full rights of *confrontation* and *cross-examination* of the witnesses called by the state at the hearing which is required to be held *after* the jury verdict has been returned. That hearing, being before the judge and not the jury and held at a time when issues of guilt or innocence of the crime have been resolved and are not involved, will not be subject to the same practical constraints as the trial itself. What cross-examination would develop remains to be seen but the defendant's statu-

tory right to that kind of hearing *after* guilt has been found is not open to question. The statute absolutely requires it and specifically conditions the judge's power to impose an extended term upon that type of evidentiary hearing being held. In this case the trial court did not hold a sentencing hearing which included presentation of evidence establishing the basis for an extended term and which afforded the defendant his statutory rights to confront and cross-examine the witnesses. Consequently the trial judge had no authority under the statute to impose an extended term in this case.

The power to impose years of imprisonment upon a defendant in addition to the imprisonment assessed by the jury is a new and substantial power. In my opinion this Court ought not to approve a procedure which short circuits the specific procedure required by the very law that granted the power. I certainly cannot say with any degree of confidence that the legislature would have granted this power to the trial judge without conditioning its exercise upon compliance with the requirements of § 558.021.1(2), *supra*, and therefore I cannot agree that the trial judge may ignore 558.-021.1(2) and yet still add years of imprisonment to the term assessed by the jury.

For the foregoing reasons I would vacate the order imposing the additional or extended terms of imprisonment and affirm the convictions and order judgment and sentence entered in accordance with the jury verdicts.

SEILER, Judge, dissenting.

I concur in the dissent of Chief Justice Bardgett, but add these remarks on what I consider an unacceptable practice inherent in all dangerous offender (and persistent offender) cases—misinforming the jury. In this case, the jury was instructed on kidnapping, rape, and robbery in the first degree under MAI-CR2d 19.20.2, MAI-CR2d 20.02.-1, and MAI-CR2d 23.02 respectively. In each case the jury was told that if it found the defendant guilty, it would "assess and declare the punishment" and the prosecutor argued to the jury that the range of punishment was up to the jury "as to what you feel a crime like this is worth". This was not the case. The jury was misinformed. Under the dangerous offender provision, § 558.016 RSMo 1978, the *court* extended the term by sentencing the defendant to thirty years for rape and twenty-five years for kidnapping when the jury had assessed the punishment at fifteen years for each crime, the maximum which could be given under the instructions.

The problem of misinstructing the jury is even more pronounced when the jury is instructed under MAI-CR2d 2.60 for class C and D felonies. In that instruction the jury is told that if they find the defendant guilty, then the court may sentence the defendant to a term of imprisonment to be fixed by the court, "but not to exceed the term assessed and declared by the jury in its verdict." If a defendant is found guilty of a class C or D felony, he may, however, be sentenced under § 558.016 as a dangerous offender or as a persistent offender. In a letter to this court regarding MAI-CR2d 2.60, a trial judge candidly remarked that advising "the jury that the Court cannot increase the punishment which they mete out in those instructions is an outright lie." We are misleading the jury when we give them erroneous information. The jury is led to deliberate under a false assumption.

I would further point out that the dangerous offender portion of § 558.016 appears to be unique. There is no precedent for a statute so worded, either in this state or in others. What troubles me in this case is that by not having a hearing on dangerousness, the trial court extended the sentence by using exactly the same evidence heard by the jury—that defendant had struck the victim with the cigarette lighter shaped like a gun and had threatened to kill her with an empty soda bottle. Yet the jury had already given defendant the maximum punishment based on what they had

heard and on the arguments to the jury made by the prosecutor, wherein he referred to the threats and violence. In addition, these were identifiable elements of the instructions on rape and kidnapping. Each instruction required a finding of "forcible compulsion", which was defined as either physical force overcoming reasonable resistance or a threat producing reasonable fear of death or serious physical injury.

Defendant did not bring himself within the dangerous offender provisions merely by virtue of his previous conviction. To come within the act it was required that he also be a dangerous offender and the only evidence on this is what the jury heard in convicting him and assessing maximum punishment.

As defendant points out in his brief, the dangerousness part of the statute does not go solely to the status of the defendant's previous record (as was the case in our former Second Offender Act, § 556.280, RSMo, 1959), but instead goes also to the activities of the defendant in the present case for which the jury convicted him and assessed his penalty. The trial court held a hearing and assessed additional punishment singly, so far as dangerousness is concerned, on the merits of a trial which had already ended in conviction and assessment of penalty by the jury. This would appear to be double punishment for the same offense.

The double jeopardy claim is not included in defendant's Points Relied On, but it is discussed in defendant's brief, with a response thereto being made in the state's brief, and it was alluded to in oral argument. It seems to me that the issue deserves our consideration.