**STATE of Missouri, Respondent,**

v.

**Robert L. PHILLIPS, Appellant.**

**No. WD 32188.**

Missouri Court of Appeals,
Western District.

Sept. 29, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 3, 1981.

Application to Transfer Denied
Dec. 14, 1981.

---

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Kirk Lohman, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and CLARK and LOWENSTEIN, JJ.

TURNAGE, Presiding Judge.

Robert L. Phillips [1] was found guilty by a jury of robbery first degree, § 569.020, RSMo 1978.[2] The jury assessed punishment at imprisonment for ten years and the trial court increased that term by three years on a finding that Phillips was a dangerous offender under § 558.016, Cum.Supp.1980.

On this appeal Phillips contends the court erred in admitting evidence that Phillips forged blank checks taken in the robbery and in finding that Phillips is a dangerous offender. Affirmed.

In September, 1979, Gina Parker was confronted by Phillips about 9:45 A.M. on the street while Parker was on her way to a job interview. Phillips displayed a knife and took Parker's purse. Parker obtained the license number of the car in which Phillips left the scene and called the police. Parker identified Phillips during the trial as the person who had forced her to hand over her purse by means of a knife. The court allowed the State to show by one witness who was employed by a grocery store that Phillips had presented checks filled out on blanks bearing Parker's name and purportedly signed by Parker. He obtained cash and groceries in exchange for the checks.

1. The prosecution here arises out of the same events related in *State v. Phillips*, 621 S.W.2d 545 (Mo.App.1981) in which Phillips was convicted of forgery.

2. All statutory references are to RSMo 1978 unless otherwise noted.

Phillips first contends the court erred in allowing evidence showing that Phillips passed forged checks on Parker's account because this was evidence of another and unrelated crime. The same contention was raised in *State v. Shabazz*, 467 S.W.2d 909 (Mo.1971). In *Shabazz* the defendant was shown to have taken a billfold in an armed robbery, and evidence was admitted that Shabazz had made a purchase by using a credit card which had been in the billfold. Shabazz contended the evidence concerning the use of the credit card constituted impermissible evidence of another crime. The court held that the possession of an item taken in the robbery had probative value to show that the defendant was one of the robbers. The court further held that the possession of the stolen credit card was logically pertinent in the proof of the commission of the armed robbery because the use of the card revealed a knowing possession. The court held the use of the card was not required to be excluded on the ground that it incidentally showed the commission of another offense.

In *State v. Meeks*, 581 S.W.2d 458 (Mo. App.1979) the evidence against Meeks revealed that he had committed an armed robbery and took a wallet. There was also evidence that Meeks used a credit card which had been in the wallet. The court held that the possession of the credit card by Meeks was clearly admissible as corroborating evidence of the robbery, and, relying on *Shabazz*, also held that evidence that Meeks had used the credit card in an attempt to make a purchase was admissible.

■ In this case Phillips was positively identified by Parker as the person who had displayed a knife and demanded her purse. She stated that her checkbook containing blank checks was in her purse. The possession and use of these three blank checks by Phillips was logically pertinent to the evidence that Phillips took the purse by force under *Shabazz*. In addition, as stated in both *Shabazz* and *Meeks*, the possession of the stolen blank checks was admissible as corroborating evidence of the robbery.

■ Phillips asserts that the evidence of the passing of the forged checks was admissible, if at all, only under the rule that recent unexplained possession of stolen property creates an inference of guilt. He then argues that he did not have possession of recently stolen property since there was about a three-month interval between the robbery and the passing of the checks. This evidence was primarily admissible because of its corroboration of evidence identifying Phillips as the robber, and because it was logically pertinent. However, it would also be admissible under the possession of recently stolen property rule. The lapse of three months would not take this evidence out of that rule because the meaning of "recent possession" must be determined from the facts in each case and the time between the crime and evidence of possession may vary from a few days to many months. *State v. Oliver*, 195 S.W.2d 484, 485[2–5] (Mo.1946).

"While the actual amount of time elapsed between theft and possession is an important, if not the most important, circumstance determining whether possession of stolen property is 'recent,' the courts have recognized that characteristics of the stolen property itself, such as portability or salability, which affect the ease with which the property is transferred also have significant impact on the reliability of the inference of guilt and, hence, on the determination whether possession is 'recent.'" Annot., 89 A.L.R.3d 1202, 1207 (1979). Considering that blank checks would have no particular resale value and that it would take some time to formulate a plan to forge and pass them, it cannot be said that three months would take the checks here out of the operation of the rule. On all of the theories mentioned, the evidence of the passing of the checks by Phillips was properly received.

■ Phillips next contends that the court erred in enhancing his punishment because the court failed to make a specific finding that Phillips "knowingly endangered" the life of Parker and, in any event, the evidence did not support such a finding. Sec-

tion 558.021 requires the court to hold a sentencing hearing to hear evidence establishing the basis for extending the term of imprisonment before a finding is made that a person is a dangerous offender.

The court conducted the required hearing after the jury had returned its verdict. The court stated that it took judicial notice of the fact that a knife was used as the threatening weapon against Parker and that she gave up her purse to avoid personal harm. Phillips contends this did not constitute a finding that he knowingly endangered the life of Parker.

The jury was instructed that it was required to find that Phillips threatened the immediate use of physical force against Parker for the purpose of forcing her to deliver her property and that Phillips used or threatened the immediate use of a dangerous instrument.

In State v. Berry, 609 S.W.2d 948, 955 (Mo. banc 1980) the court held there was no requirement that any or all of the trial testimony be recited at the sentencing hearing for the purpose of determining whether or not the Dangerous Offender Act would apply. The court held that the trial court could take judicial notice of the prior proceedings and consider the evidence adduced at the trial. Here, the same trial judge conducted the sentencing hearing who heard the evidence at trial and the same counsel were present. Phillips' contention boils down to an argument that the trial court did not use the statutory phrase "knowingly endanger the life of Parker." However, the statute does not require only a finding that Phillips endangered the life of Parker. It is sufficient if Phillips threatened the life of Parker. Phillips acknowledges this, but contends he did not threaten her life because he only displayed a knife without saying anything. The Southern District answered this argument in State v. Manis, 614 S.W.2d 771, 773[3] (Mo.App.1981) when it said, "threats may not only be spoken but may be conveyed by actions, events, conditions and signs, or by a combination of any two or all. The exhibition and pointing of what appears to be a deadly weapon, with or without a verbal threat, can be, and most assuredly usually is, interpreted as a threat of violence and a threat to inflict serious physical injury as a consequence of any disobedience to the exhibitor's demands and admonishments."

The finding by the court that the knife was the threatening weapon used against Parker and she gave up her purse to avoid personal harm was sufficient to constitute a finding under § 558.016 that Phillips knowingly threatened the life of another person.

The judgment is affirmed.

All concur.